# TEXAS AND PACIFIC RAILWAY COMPANY *v.* SOUTHERN PACIFIC COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 1210.    Submitted October 21, 1890. — Decided November 3, 1890.

A title, right, privilege or immunity under the Constitution, or any treaty
or statute of the United States, is not properly set up or claimed under
Rev. Stat. § 709, when suggested for the first time in a petition for re-
hearing, after judgment.

The provisions of the Code of Practice of Louisiana in relation to judg-
ments of the Supreme Court of that State, do not require the application
of any different rule.

Where a decree is entered by a court of the United States, by consent, and
in accordance with an agreement, between the parties referred to therein,
no title or right claimed under an authority exercised under the United
States is decided against by a State court in determining that the valid-
ity of a particular article of such agreement was not in controversy
or passed upon in the cause in which the decree was rendered; and in the

instance of a decree similarly entered by a court of one State, due effect to the final judgment of such court is not refused to be given by a like determination by a court of another State.

MOTION TO DISMISS OR AFFIRM.    The case was stated by the court as follows:

The Texas and Pacific Railway Company, represented by its receiver, filed its petition against the Southern Pacific Company in the Civil District Court for the Parish of Orleans on the 11th of April, 1888.    The receiver was subsequently discharged and afterwards died, and the cause was ordered to be proceeded with in the name of the railway company as sole plaintiff.    By the petition the company described itself as a corporation created by and under the laws of the United States, namely, certain enumerated acts of Congress.    After stating that the plaintiff had offices in Texas and at New Orleans, and that its lines of railway extended or reached, by track-running arrangements or connections, from El Paso, Texas, to New Orleans, and to Galveston, Texas, the petition set up an agreement entered into on the 26th of November, 1881, by Huntington of New York, on behalf of himself and his associates, and certain railway corporations, with Gould of New York, on behalf of himself and his associates, and certain railway corporations, a copy of which agreement was annexed; and further alleged that thereafter, on or about February 18, 1885, this agreement was amended by a modification, a copy of which was also annexed.    The object of the contract as expressed may be briefly described as in substance the settlement of pending litigation in the courts of Texas, Arizona and New Mexico, the release and relinquishment of certain disputed rights and franchises of plaintiff west of El Paso, and the construction of plaintiff's track to make a junction with the other railroads at a certain point east of El Paso.    The petition further averred that the agreement and its modification had been duly adopted and ratified by the several corporations mentioned, and that it had been in all things complied with by the plaintiff as well as by the other parties of the second part.

The petition also averred : " That in pursuance of said agreement the same was duly made a decree of the court in the said litigation herein referred to, and in said courts of Texas, New Mexico and Arizona, as by duly certified copies of said decrees will appear and in the form shown by the copy hereto annexed as part hereof and marked Exhibit 'C.' Which decrees conformed with and carried out said agreement." Article VI of the agreement and the modification were then set forth, and related to the disposition of business and division of earnings between points in respect to which the lines of plaintiff and defendant were competing, as subsequently determined.

The petition then alleged that the defendant, a corporation created and organized under the laws of Kentucky, but doing business in Louisiana, and having its principal place of business in the city of New Orleans, with a general manager there authorized to receive service of process, and which company was controlled by Huntington and his associates, took possession and control about November, 1884, of the railroad companies mentioned in the agreement as represented by Huntington, etc., and adopted as its own and assumed the rights and obligations of the agreement and its modification, and since had been and was now liable as party of the first part for all the obligations of the parties thereto of the first part ; that it rendered accounts of the business done by it, under the agreement and modification, down to March 31, 1887, and the defendant up to that time recognized the plaintiff as the party to whom accounting should be made ; that by Article XV of the agreement it was provided that either or any of the several railroad companies, parties thereto, might maintain any action, either at law or in equity, against either, any or all of the other railroad companies, to protect any rights secured by the agreement, or to specifically enforce the same, or to recover damages for a breach of the same affecting its interest ; that plaintiff was entitled to an accounting and to a decree against the defendant for the amount which would then appear to be due under said agreement, and demanded judgment against the defendant for the sum of $352,717.78, alleged

to be due up to March 31, 1887, and for a further sum of $200,000 and over from March 31, 1887, and a small additional claim for an excess of earnings in its favor in the operation of certain lines of railroad in New Mexico and Arizona, and for such additional claims as might be discovered and ascertained on trial.

Exhibit " C " purported to be a copy of the decree of the District Court of the Third Judicial District of New Mexico, which contained the following clause :

" The aforesaid decree is made to carry out the provisions in this behalf of said agreement, dated November 26, 1881, which is hereby made a part of this decree, and by consent of the parties, and upon consideration by the court, is hereby ordered to be binding upon each and all of the parties hereto in all its stipulations and agreements as therein shown, and said decree does not affect or otherwise interfere with the provisions of the agreement."

To this petition the defendant filed peremptory exceptions to the effect :   That the contract sued upon being a railway pool between competing railroad companies to divide between them their earnings from competitive traffic was illegal, for the reason that it was injurious to the public interest and contrary to public policy, and hence it could not be enforced by a court of justice ; that the contract contravened a clause in the constitution of Texas, in force at the time it was entered into ; and that even if valid, the contract was terminated by the provisions of the act of Congress approved February 4, 1887, entitled " An act to regulate commerce," which went into effect the third of April, 1887, and was generally known as the Interstate Commerce Act.

The cause went to trial and testimony was taken on the exceptions, bearing upon the relative positions of the railroad companies that were parties to the pooling agreement, and the injury to the public from the destruction of competition arising therefrom.   The acts of incorporation of the defendant, and of the various companies, parties to the contract, and represented by Huntington, were introduced in evidence, and the plaintiff offered the acts of Congress and of the State of Texas, referred to in the pleadings.

The District Court on the 21st of December, 1888, entered the following order upon its minutes:

"In these exceptions submitted to the court for adjudication, and the court considering the prohibition contained in art. 10, sec. 5, of the constitution of Texas, adopted in 1876, and, for reasons orally assigned by the court, the law and evidence being in favor of plaintiff in exceptions, it is ordered that the peremptory exceptions filed herein on May 19th, 1888, be maintained, and accordingly that plaintiff's suit be dismissed. Judgment rendered December 21st, 1888, with costs."

The plaintiff filed its motion for a new trial, enumerating various grounds therefor, which motion was overruled and judgment signed, whereupon plaintiff carried the cause by appeal to the Supreme Court of the State and there assigned numerous errors. In none of the grounds for new trial or the errors assigned were the alleged federal questions hereafter referred to specially set up. The Supreme Court held that the pooling contract sued on was illegal and void upon general principles of law and public policy, and upon that ground affirmed the judgment of the court below. The court in its opinion expressly declared that it did not find it necessary to pass upon the defences based upon the constitution of Texas and the Interstate Commerce Act.

Plaintiff thereupon filed an application for a rehearing, in which it claimed, among other things, that the court had denied plaintiff's rights under the decrees of the courts of New Mexico, Arizona and Texas; that the acts of Congress referred to in the petition conferred upon plaintiff the right to enter into the agreement, public policy to the contrary notwithstanding; and that, as the subject matter of the contract sued on related to interstate commerce and Congress had not forbidden such an agreement, "any attempt to apply State laws to annul such agreement is unlawful." The Supreme Court denied the rehearing, and an application was then made to the chief justice of Louisiana for a writ of error, which was refused, but the writ was subsequently allowed by one of the justices of this court. The cause having been docketed, the defendant in error moved to dismiss or affirm.

*Mr. Henry J. Leovy* and *Mr. Joseph Paxton Blair* in support of the motion.

*Mr. John F. Dillon* and *Mr. W. W. Howe* opposing.

MR. CHIEF JUSTICE FULLER, after stating the case as above, delivered the opinion of the court.

The decision of the Supreme Court of Louisiana was not against the validity of a treaty or statute of, or an authority exercised under, the United States, nor in favor of the validity of a statute of, or an authority exercised under, any State, drawn in question on the ground of repugnancy to the Constitution, treaties or laws of the United States; and, in order to maintain jurisdiction because of the denial by the State court of any title, right, privilege or immunity claimed under the Constitution or any treaty or statute of the United States, it must appear on the record that such title, right, privilege or immunity was " specially set up or claimed " at the proper time and in the proper way.

It is contended that the plaintiff company had the right, under the acts of Congress by which it was incorporated, to make the contract in question, and hence that the decision that such contract was illegal and contrary to public policy, constituted a denial of a right or privilege conferred by a statute of the United States: and also, that as the agreement related to earnings from interstate as well as from intrastate traffic, such decision was an interference with the freedom of interstate commerce, within the prohibition of the commerce clause of the Constitution of the United States. But it does not appear that either of these propositions was presented to the trial court in any way, or advanced in the Supreme Court, until urged in the petition for a rehearing. The title, right, privilege or immunity was not specially set up or claimed at the proper time and in the proper way. It is true that under the law of Louisiana a judgment of the Supreme Court does not become final until after six judicial days from the rendering of the judgment have elapsed, within which time a dissatisfied

party may apply for a new hearing of the cause, but it does
not follow that new grounds for decision will be allowed to
be presented, or will be considered on such application, and
the general rule is otherwise. La. Code of Practice, Arts. 911,
912; 538, 539, 547; 548. *Rightor* v. *Phelps*, 1 Rob. La. 330;
*Stark* v. *Burke*, 9 La. Ann. 344; *Caldwell* v. *Western Marine
Ins. Co.*, 19 La. 48; *Hanson* v. *City of Lafayette*, 18 La. 309.
And while the court is required to state the reasons of its
judgments, it is not obliged to give reasons for refusing a new
hearing. Code of Practice, Arts. 909, 914.

We are of opinion that in Louisiana, as elsewhere, a title,
right, privilege or immunity is not properly claimed, under the
act of Congress, when suggested for the first time in a petition
for a rehearing, after judgment. The case of *Stewart* v. *Kahn*,
11 Wall. 493, cited for plaintiff in error, is not to the contrary.
The petition referred to there seems to have been simply one
for review on appeal, and not a petition filed after the case
had been decided by the Supreme Court, and the record
showed the decision of the federal question by both tribunals.

In the case at bar, it does not appear in direct terms or by
necessary intendment that these points were brought to the
attention of either of the courts prior to the entry of the judg-
ment of affirmance.

If, therefore, the maintenance of this writ of error depended
upon the questions thus raised, the motion to dismiss would be
sustained; but it is insisted in addition that the State courts
did not give due effect to the decrees of the courts of New
Mexico and Arizona and of the State of Texas, and that a
title or right claimed under an authority exercised under the
United States, as well as under the Constitution of the United
States, was thereby denied.

No certified copies of the decrees referred to were annexed
to the petition, but there was attached an uncertified copy of
what purported to have been a decree in the District Court of
New Mexico, between plaintiff and sundry of the railroad
companies named in the agreement, defendants. Upon the
hearing plaintiff did not present certified copies of the decrees
and insist upon rulings as to their effect, nor did it specifically

aver in its petition that the agreement for the division of earnings had been adjudged to be valid and binding upon the parties by those decrees. The question of the illegality of the contract seems to have been submitted upon the merits, and was so decided, so that there is ground for the argument that the right had not been properly set up or claimed in compliance with the statutory requirement. It is earnestly urged, however, that the exceptions were in the nature of demurrers, and that being treated as such, the petition, taken in connection with Exhibit C, sufficiently presented the question. And the Supreme Court in its opinion sent up as part of the record, and to be found reported in 41 La. Ann. 970, said: "A point which overshadows the discussion of all three of the exceptions is made by plaintiff's counsel, who contends that, the agreement between the parties having been sanctioned by a decree of the courts in which the litigation adjusted between the railroad companies was pending, it has now acquired the force and effect of the thing adjudged, and hence it cannot be attacked collaterally;" and it proceeded to consider and dispose of that contention.

We shall overrule the motion to dismiss; but, there having been color for it, will pass upon the motion to affirm.

In reference to the decrees, the Supreme Court of Louisiana held that the rule invoked applied only to matters of pre-existing differences, settled and compromised, and not to agreements or contracts for future action and execution; that the subject matter of Article VI of the agreement was not a subject of contention between the parties, either as a difference or in the shape of any pending litigation, at the time the agreement was entered into: that in fact it had had no existence prior to the contract itself, and had no reference to the past, but its whole operation or effect was intended exclusively for the future; that the decree carefully enumerated all the litigious matters which were in suit between the several railway companies, parties to the litigation then pending; and that no other matters in the agreement were affected by the judgment; and Mr. Justice Poché, speaking for the court, called attention as clearing away any doubt to that part of the decrees which

declared that they were made to carry out the provisions in this behalf, and did not affect or otherwise interfere with the provisions of the agreement.

It was concluded that the stipulations of Article VI had not the force and effect of the thing adjudged, and were lawfully liable to attack in the mode and manner adopted by the defendant. It was added that this conclusion was mainly predicated upon the view that the agreement in its entirety did not evidence a single and connected contract, but that the instrument was used as a means to facilitate the execution by two representatives of numerous obligors and distinct obligees of a series of varied and distinct contracts.

By this decision was the validity or due effect of either of these decrees disallowed by the state court? We do not think so.

The decrees were entered by consent, and in accordance with the agreement, the courts merely exercising an administrative function in recording what had been agreed to between the parties, and it was open to the Supreme Court of Louisiana to determine, upon general principles of law, that the validity of Article VI was not in controversy or passed upon in the causes in which the decrees were rendered. In doing so, that court did not refuse to give due effect to the final judgment of a court of the United States or of another State.

The judgment is

*Affirmed.*