NEW YORK CENTRAL AND HUDSON RIVER RAILROAD
COMPANY *vs.* THE T. STUART AND SON COMPANY.

Middlesex.   December 7, 1926. — June 29, 1927.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

</div>

*Contract,* Of indemnity, Construction, Performance and breach. *Res Judicata. Equity Pleading and Practice,* Decree. *Evidence,* Competency.

A contractor agreed in writing with a railroad corporation to build a concrete retaining wall along the side of a part of its location. Provisions of the contract were that the work was to be done in accordance with plans and specifications prepared by the railroad corporation's engineer, which were to be followed strictly except for such changes as might be authorized by the corporation's chief engineer. The contractor agreed to indemnify and save the corporation harmless from all claims or payments on account of damages received or sustained "by reason of any act of the said Contractor, or of any Sub-contractor hereunder, or of any agent or servant of either said Contractor or said Sub-contractor, in the construction of said work." Specifications provided that "no information upon any such matters derived from maps, profiles or specifications, or from the Engineer or his Assistants, shall in any way relieve the Contractor from all risks incident to the work"; and "The Contractor will not trespass or encroach on the land of abutting owners, except as he himself obtains permission so to do." In the course of the work, the contractor built a part of the foundation of the wall upon land of an abutting owner, who brought a suit in equity against the corporation. From a final decree ordering the payment of damages, the abutting owner appealed and the decree was reversed by this court, who ordered that a mandatory injunction issue requiring the removal of the wall from the plaintiff's land. Thereafter the suit was settled by the payment of money to the plaintiff and the conveyance by him of an easement in the land encroached upon, and a final decree was entered by consent stating those facts and dismissing the suit. The contractor had been notified and given an opportunity to defend the suit and was kept in constant touch with the proceedings. It did not appear that the contractor assented to the settlement. The

railroad corporation then brought an action at law against the contractor to recover the amount paid and the expense incurred in the defence and settlement of such suit. It was conceded that the railroad corporation acted in good faith in making the settlement. *Held*, that

(1) Such final decree dismissing the suit in equity, entered in settlement and by consent of the parties, whatever its effect as between them, was not an adjudication binding the contractor, it not appearing that he was a party or consented to it;

(2) It was proper for the judge to refuse to rule at the trial of the action by the railroad corporation against the contractor, that such decree dismissing the suit in equity was an adjudication that there was no encroachment;

(3) It was error for the judge to rule that the equity proceedings conclusively established such encroachment;

(4) It was proper to admit in evidence an interlocutory decree and mandatory injunction following the rescript from this court in the equity suit, such evidence having a bearing upon the reasonableness of the settlement;

(5) An instruction to the jury that "it was the duty of the defendant to defend the suit and to take the place of the railroad company" was error, it having been optional with the defendant whether it would appear and defend;

(6) A ruling requested by the defendant, "If the defendant constructed the retaining wall in accordance with the contract, plans, lines, stakes and directions furnished to it by the plaintiff or its engineers, inspectors and agents, the plaintiff is not entitled to recover in this action," should have been given;

(7) A ruling requested by the defendant, "If there was an encroachment upon the . . . [abutting] land by the defendant in constructing the retaining wall in accordance with the provisions of its contract with the plaintiff, and such encroachment was due to the act or negligence of the plaintiff, the plaintiff is not entitled to recover in this action," should have been given;

(8) A ruling requested by the defendant, "If the plaintiff, or its engineers, inspectors, or agents furnished contracts, plans, lines, stakes or directions to the defendant for the construction of the retaining wall and the trespass or encroachment on the . . . [abutting] land was caused by the defendant's following the contracts, plans, lines, stakes or directions furnished by the plaintiff, the defendant is not liable in this action to the plaintiff," should have been given;

(9) The agreement of indemnity, even when read with the quoted portions of the specifications, did not make the contractor responsible for the acts of negligence of the railroad corporation or its agents.

CONTRACT OR TORT with a declaration in two counts, the first count being upon the agreement of indemnity described in the opinion. Writ dated October 28, 1914.

In the Superior Court, the action was tried before *Dubuque*, J. Material evidence and rulings by the judge are

stated in the opinion.   The jury found for the plaintiff in the sum of $7,097.28.   The defendant alleged exceptions.

*F. P. Garland,* for the defendant.

*L. A. Mayberry,* for the plaintiff.

BRALEY, J.   On August 4, 1909, the defendant entered into a contract with the plaintiff, the lessee of the Boston and Albany Railroad, for the building of a concrete retaining wall approximately seven hundred feet in length along the northerly side of the location of the railroad at Brighton in this Commonwealth.   The work was to be done in accordance with plans and specifications prepared by the plaintiff's engineer, and "All directions, explanations, superintendence, and instructions, spoken of, or required" under the contract also were to be given by the chief engineer or such "Engineers in charge of the work, Assistant Engineers or Inspectors as he may designate in writing," whose functions and powers were "strictly limited to the supervision of the Contractor's operations in executing this work." The contract further provided that such engineers in charge of the work, assistant engineers and inspectors "are . . . expressly prohibited from making, permitting, or authorizing any alterations, changes, or departures in or from the terms and provisions of this contract, or said plans and specifications."   The chief engineer was the only person authorized to make changes and to determine the quality and quantity of the work performed.   His interpretation of and decision upon questions in dispute between the parties was to be accepted as conclusive and binding, and "Any omission or failure on the part of the Engineer in charge of the work, or of the Chief Engineer, to disapprove or reject any work or material at the time of a monthly or other estimate, or during the inspection of the work or materials, shall not be construed to be an acceptance of any defective work or material."   The contract contained the following clause of indemnity: "The Contractor agrees to indemnify and save harmless the Company for and from all claims, demands, payments, suits, actions, recoveries and judgments of every name and description, brought or recovered against it, for, or on account of, any injuries or

damages, received or sustained by any party or parties, by reason of any act of the said Contractor, or of any Sub-contractor hereunder, or of any agent or servant of either said Contractor or said Sub-contractor, in the construction of said work, or by or in consequence of any negligence or carelessness in guarding the same; . . . Neither the completion and acceptance of the work, nor the final payment, operate to discharge the Contractor from his (or its) responsibility for any claims for any personal or property damages which may have arisen during the work under the contract, whether such claims are then known or may become known in the future." By paragraph two of the specifications, "no information upon any such matters derived from maps, profiles or specifications, or from the Engineer or his Assistants, shall in any way relieve the Contractor from all risks incident to the work." The seventh paragraph of the specifications states, that "The Contractor will properly and sufficiently sheet and brace the excavation along the property line of the Company, which is also the backline of the retaining wall, that the adjacent land of abutting owners shall not cave in or be in any way disturbed. The Contractor will not trespass or encroach on the land of abutting owners, except as he himself obtains permission so to do"; and in paragraph fifteen "The Contractor agrees that this being a wall on the property line of the Railroad Company, he will protect, brace, and not trespass upon, the land of abutting owners, and will protect the Railroad Company from all suits, claims or damages arising from the prosecution of the work, and will himself assume all responsibility for damages to the property of abutting owners."

The present action is brought to recover damages for an alleged breach of the clause of indemnity. It could have been found by the jury that, as the work progressed, the retaining wall extended for a short distance on to the land of one Hermine Szathmary, an abutting owner, who had not assented to the encroachment. It was contended by the defendant that if any trespass had been committed, in the erection of the wall, it was done under the direction, order and approval of the plaintiff and was due to its negligence,

and evidence in support of this contention was introduced at the trial. On November 8, 1909, after the completion of the wall, Szathmary brought a bill in equity against the Boston and Albany Railroad Company and the defendant for damages and for an injunction, at the trial of which — as shown by a transcript of the proceedings admitted in evidence — the defendant was found to have trespassed; but damages only were awarded. On the plaintiff's appeal, the decree was reversed by this court, *Szathmary* v. *Boston & Albany Railroad*, 214 Mass. 42, and the trial court, after rescript, entered an interlocutory decree directing the removal of so much of the wall as constituted an encroachment on the plaintiff's land; but, the parties having agreed upon a settlement, the railroad company paid to Szathmary $3,585, and thereupon a final decree was entered, the material part of which is as follows: " . . . it appearing that a settlement of the matters in dispute therein has been made by grant of a certain easement in the land of the plaintiff . . . by deed . . . now therefore, upon consideration thereof, and by agreement of all parties hereto, it is ordered, adjudged and decreed that the plaintiff's bill be and the same is hereby dismissed without costs to either party." It was agreed by the parties that the defendant was seasonably notified of the pendency of the bill and given opportunity to defend the suit, but did not enter an appearance. It also was agreed that if Mr. George L. Mayberry, of counsel for the defence, were in court he would testify that "from the time the rescript in the case of Szathmary against the Boston and Albany Railroad, February twenty-sixth, nineteen thirteen, was handed down by the Supreme Judicial Court, to the date of the final settlement to Szathmary, July seventh, he was in constant touch with Mr. Jesse C. Ivy," counsel for the contractor.

After the introduction of the foregoing documentary evidence and the report of an auditor to whom the case had been referred, the plaintiff rested. During the introduction of testimony by the defendant, and subject to its exception, the judge made the following rulings: " . . . the question of encroachment upon Szathmary land is conclusively deter-

mined in an equity suit in Suffolk, where the findings of fact show that there was an encroachment, and said findings were binding upon the parties to that suit, to their privies, and that the defendant company was bound by such finding of fact on the matter of encroachment or trespass; that therefore the court rules that the evidence offered is not admissible in this suit.

"If the plaintiff in good faith made the settlement on the basis that there was an encroachment there and made what he deemed in good faith was the best settlement that could be made under the circumstances, that although in reaching that settlement he got a deed for an easement in the Szathmary land, that that came in within the terms of the contract of indemnity, whereby the plaintiff [*sic*] was obliged to pay the plaintiff, what it paid out to get rid of the encroachment. If the taking of the deed was merely a form or means of reaching a settlement in good faith, that it would not deprive the plaintiff of a right of action against the defendant for an amount paid in good faith, if the real basis of the getting of the deed and the paying of it was to make a final settlement.

"I think it appears if the plaintiff acted as a reasonably prudent man would act under similar circumstances, acting in good faith, then that it may recover the amount it paid, although it turns out and the jury find that the work would have been done for less, if before the settlement the plaintiff notified the defendant that it was considering seriously the question of settlement, and gave some idea as to the approximate amount or some amount that was being spoken of.

"It is open to the defendant in this suit to show that the work of removing the encroachment upon Szathmary land could be done for much less money than the plaintiff paid in settlement of the trespass, and that it is also open to the defendant to show that the money wasn't paid in good faith, that it was paid after the defendant notified the plaintiff through its counsel that it was ready to do the work of removing the encroachment, if there was an encroachment, for $200, provided it had the right to go on the property of Szathmary so to do."

The doctrine of *res judicata* or estoppel by judgment is applicable only after a final decree has been entered. *Leverett* v. *Rivers,* 208 Mass. 241, 244. *Desmond* v. *Fawcett,* 226 Mass. 100, 105. *Reidy* v. *Kennedy,* 233 Mass. 514, 518. See *Corbett* v. *Craven,* 193 Mass. 30. The first final decree, entered by the trial court, was vacated by the appeal and reversed by the order of this court. *Szathmary* v. *Boston & Albany Railroad, supra. Sunter* v. *Sunter,* 204 Mass. 448, 453. Neither the opinion nor the rescript had the effect of a final decree. *Snell* v. *Dwight,* 121 Mass. 348, 349. *Reidy* v. *Kennedy, supra. Renwick* v. *Macomber,* 233 Mass. 530, 532. The final decree dismissing the bill was entered because the case had been settled. The decree was a compromise and settlement by the parties; it was not an adjudication on the merits. The defendant could have appeared and defended the suit; but even if it did not, it was bound only by the court's determination of the issues actually litigated, as they became material in the present action brought under the indemnity clause of the contract. *Boston* v. *Worthington,* 10 Gray, 496, 498. *Montgomery Door & Sash Co.* v. *Atlantic Lumber Co.* 206 Mass. 144, 157, and cases cited. *New York Central Railroad* v. *William Culkeen & Sons Co.* 249 Mass. 71, 77. The decree also, in substance and effect, was a consent decree, which did not establish anything on the merits. It was unnecessary to consider the merits in order to enter it. *Lawrence Manuf. Co.* v. *Janesville Cotton Mills,* 138 U. S. 552, 561. *Texas & Pacific Railway* v. *Southern Pacific Co.* 137 U. S. 48, 56. *Gray* v. *Parpart,* 106 U. S. 679. *Wadhams* v. *Gray,* 73 Ill. 415. *Jenkins* v. *Robertson,* L. R. 1 H. L. (Sc.) 117. It is not a judicial determination by the court of any litigated right. *Cutter* v. *Arlington Casket Co.* 255 Mass. 52, 62. The decree, whatever its effect may be as between the plaintiff and Szathmary, was not binding on the defendant in the absence of proof of its acquiescence in the settlement. See *Conner* v. *Reeves,* 103 N. Y. 527; *Munster* v. *Cox,* 10 App. Cas. 680; *Wytcherley* v. *Andrews,* L. R. 2 P. & D. 327, 329. But such assent was not given. The trial judge in his instructions stated, without objection, that it did not appear, nor did

the plaintiff contend, that the defendant, through its counsel, had consented to the settlement.

The plaintiff, accordingly, must show that the settlement was fair and reasonable in view of the circumstances under the indemnity clause. It was conceded that the plaintiff acted in good faith and the auditor found that the amount paid in settlement was fair and reasonable, and that it was not in excess of what it would have cost to comply with the conditions required by the interlocutory decree of January 10, 1914.

The judge rightly refused to rule that the final decree dismissing the bill was an adjudication that there was no encroachment upon the Szathmary land. But the ruling that the proceedings conclusively established the encroachment was erroneous. The opinion of this court in *Szathmary* v. *Boston & Albany Railroad, supra*, however, is not a part of the record in that case, *Snell* v. *Dwight, supra*, and the interlocutory decree therein was vacated by the final decree dismissing the bill. But the portion of the opinion quoted by the trial judge and the interlocutory decree were admissible in this suit for their bearing upon the reasonableness of the settlement. See *Hawks* v. *Truesdell*, 99 Mass. 557, 559; *Attorney General* v. *Armstrong*, 231 Mass. 196, 202; *Carere* v. *F. W. Woolworth Co.* 259 Mass. 238. The instruction given, to which the defendant excepted, that "it was the duty of the defendant to defend the suit and to take the place of the railroad company," was error. It was optional with the defendant whether it would appear and defend.

But the defendant's fifth, sixth and seventh requests: "If the defendant constructed the retaining wall in accordance with the contract, plans, lines, stakes and directions furnished to it by the plaintiff or its engineers, inspectors and agents, the plaintiff is not entitled to recover in this action"; "If there was an encroachment upon the Szathmary land by the defendant in constructing the retaining wall in accordance with the provisions of its contract with the plaintiff, and such encroachment was due to the act or negligence of the plaintiff, the plaintiff is not entitled to

recover in this action"; and "If the plaintiff, or its engineers, inspectors, or agents furnished contracts, plans, lines, stakes or directions to the defendant for the construction of the retaining wall and the trespass or encroachment on the Szathmary land was caused by the defendant's following the contracts, plans, lines, stakes or directions furnished by the plaintiff, the defendant is not liable in this action to the plaintiff," should have been given. *Boston & Maine Railroad* v. *T. Stuart & Son Co.* 236 Mass. 98, 103. The case of *New York Central Railroad* v. *William Culkeen & Sons Co., supra,* cited by the plaintiff, is distinguishable. The covenant of indemnity in that case included damage as a result of acts of the indemnitee, and, if certain words of the covenant were to be given any effect, they had to be construed as not excluding negligent acts of the indemnitee. The indemnity clause in the case at bar, even if read with the second and fifteenth clauses of the specifications, does not contain language which supports a construction making the contractor responsible for the acts of negligence of the railroad or its agents.

We have considered all the questions argued by counsel for the defendant and, for the reasons stated, the entry must be

*Exceptions   sustained.*