A-1 BEVERAGE COMPANY, INC. *vs.* AMERICAN DRY GINGER
ALE COMPANY, INCORPORATED.

Suffolk.   October 6, 1954. — December 21, 1954.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Contract*, Construction, "Franchise" contract, Contract of indemnity.
*Words*, "Assume full responsibility."

Under a "franchise" agreement granting an exclusive license within a
described territory to manufacture, bottle, sell and distribute bev-
erages of the licensor under his trade name and trade mark and con-
taining paragraphs setting forth the duties of the licensee respecting
the manufacture and bottling of the beverages, a subsequent para-
graph providing that the licensee should "assume full responsibility
in connection with" the manufacture and bottling and that "in no
event shall the licensor be held responsible for improper preparation,
bottling or manufacture . . . or be liable for any claims growing out
of any acts of the licensee" referred only to an obligation of the li-
censee to indemnify and save harmless the licensor from claims of
third persons resulting from the acts of the licensee in the course of
such processes and did not entitle the licensor to recover from the li-
censee for damage to the licensor's good will resulting from improper
manufacture and bottling by the licensee.

CONTRACT.   Writ in the Municipal Court of the City of
Boston dated July 8, 1953.

The defendant appealed from an order of the Appellate
Division dismissing a report by *Lewiton*, J., who found for
the plaintiff in the sum of $1,992.80 and interest.

In this court the case was submitted on briefs.

*Julius H. Soble*, for the defendant.

*Maurice S. Glaser*, for the plaintiff.

WILLIAMS, J.   This is an action of contract to recover
the sum of $1,992.80 under the terms of a written contract
executed by the parties on June 16, 1953.   The contract, in
which the plaintiff and the defendant are referred to re-
spectively as A-1 and American, provided in part as follows:
"The Agreement between the said parties dated March 16,

1953 is hereby cancelled, annulled and declared to be of no further legal effect, and the said parties do hereby mutually release each other from all the obligations contained in said Agreement, with the exception of the following:

"1. American hereby agrees that it is presently indebted to said A–1 in the sum of four thousand, three hundred seventy-four dollars and eighty cents ($4,374.80), said sum representing recharges for merchandise sold and delivered by said A–1. American hereby agrees to pay to said A–1 the said amount in the following manner and upon the following dates:

$1868.65 on June 30, 1953
1992.80 on July 7, 1953
513.35 on July 14, 1953. . . .

"4. A–1 hereby agrees that Paragraph 15 of the Agreement dated March 16, 1953 shall survive this cancellation of said Agreement insofar as it applies to the manufacture, bottling, sale and distribution of American Dry beverages and to any claims growing out of any acts of A–1 prior to this date."

The agreement of March 16, 1953, to which reference is made was a so called "franchise" agreement whereby the defendant granted the plaintiff an exclusive license within a described territory to bottle, sell, and distribute beverages known as "American Dry" under the defendant's trade marks and trade names. The plaintiff agreed in paragraph 3 to "purchase the concentrate, extracts and salts necessary for the manufacture" of the beverages from the defendant, in paragraph 6 to bottle the beverages "in accordance with the directions, formulae and specifications as furnished by the Licensor," and in paragraph 13 to "exert its best efforts to properly and competently bottle and distribute American Dry beverages throughout the prescribed territory." Paragraph 15 of this March agreement provided that "The Licensee shall assume full responsibility in connection with the manufacture, bottling, sale and distribution of American Dry beverages in the prescribed territory, and in no event shall the Licensor be held responsible

for improper preparation, bottling or manufacture of American Dry beverages, or be liable for any claims growing out of any acts of the Licensee."

In its answer, in addition to general denial and averment of payment, the defendant pleaded, "the plaintiff negligently and improperly manufactured and bottled said beverages, and by reason of the failure of the plaintiff to perform its obligations as created by the said agreement between the parties, the defendant has sustained serious damages, liabilities and losses, and the damages so sustained it claims to be entitled to recoup in this proceeding." At the trial the defendant offered evidence in support of its answer in recoupment "that the plaintiff by reason of its negligent or other improper preparation, manufacture, and bottling of carbonated beverages, which were distributed by the plaintiff before June 16, 1953, and which beverages contained the trade mark and label of 'American Dry,' the property of the defendant, caused injury to the good will of the defendant, with resulting loss of patronage from the defendant's customers to whom these unsatisfactory and improperly prepared products had been delivered by the plaintiff." On objection by the plaintiff this evidence was excluded and the case reported to the Appellate Division on the correctness of such exclusion. The Appellate Division ordered that the report be dismissed and the defendant appealed.

Since the right of the defendant to recoup must spring from the contract under which the plaintiff seeks recovery (*American Bridge Co. of New York* v. *Boston,* 202 Mass. 374, 376) and the plaintiff was released from all of its obligations under the March agreement by the provisions of the first paragraph of the June agreement, except those arising under paragraph 15 of the March agreement, it is manifest that the answer in recoupment is intended to allege a failure by the plaintiff to comply with the provisions of that paragraph. The admissibility of the excluded evidence, which is the only matter of law reported, depends on whether under that paragraph the defendant can recover for injury to its good will due to negligent and improper manufacture and

bottling of the licensed beverages by the plaintiff. The duties owed to the defendant in respect to such manufacture and bottling were carefully set forth in paragraphs 6 and 13, above quoted. Paragraph 15, inserted later in the agreement, appears intended to relate to a different subject. Having agreed to manufacture the beverages in accordance with the defendant's specifications and to exert its best efforts to properly bottle and distribute them the plaintiff then, in paragraph 15, assumed "full responsibility" for such manufacture, bottling, and distribution. As the plaintiff was already obligated to the defendant by virtue of the preceding paragraphs this responsibility can, in reason, only refer to an obligation to indemnify and save harmless the defendant from claims of third persons resulting from the acts of the plaintiff in the process of manufacture and distribution. The words "assume full responsibility" are apt to express an obligation of indemnity. See *New York Central Railroad* v. *William Culkeen & Sons Co.* 249 Mass. 71, 74; *New York Central & Hudson River Railroad* v. *T. Stuart & Son Co.* 260 Mass. 242, 245. Compare *Farrell* v. *Eastern Bridge & Structural Co.* 291 Mass. 323. These words, considered in their context, refer to the obligation to respond to the claims from which, in the same sentence, it is provided that the defendant be relieved.

We think that the defendant cannot recover for damage to its good will under the provisions of paragraph 15. The evidence offered by the defendant was rightly excluded.

*Order dismissing report affirmed.*