STANDARD ACCIDENT INS. CO. ET AL. *v.* NATIONAL FIRE PROOFING CO.

(Decided February 23, 1931.)

*Messrs. Dustin, McKeehan, Merrick, Arter & Stewart,* for plaintiffs in error.

*Messrs. Thompson, Hine & Flory,* for defendant in error.

HORNBECK, J.  The parties in the trial court held the same relative positions as they do here.  Homer E. Berchtold, an employee of the defendant National Fire Proofing Company, on June 1, 1927, while engaged in work for his employer on the ground floor of the Terminal Tower building, was struck on his head, which projected outside the line of the exterior

wall and killed by a falling brick which had been disengaged from a freshly laid exterior wall at the eleventh floor. The workman who kicked the brick loose from the wall at the eleventh floor was in the employ of the general contractor, John Gill & Sons, which firm was doing the masonry work on the Terminal Tower building. The administrator of the Berchtold estate adjusted the claim for damages for wrongful death with John Gill & Sons, who secured the money from the Standard Accident Insurance Company, which carried a policy of insurance indemnifying the partnership for losses such as occasioned by the death of Berchtold.

The plaintiffs called upon defendant to reimburse them for the money so advanced.

The claim of plaintiffs was predicated upon the terms of the contract between John Gill & Sons, principal contractor, and defendant, a subcontractor, and particularly upon sections 5 and 8 of the subcontract.

The defendant answered, denying liability under the contract, and asserting a waiver by John Gill & Sons of the provisions thereof which required the subcontractor to provide and maintain guards and any other necessary protection to workmen.

The reply of the plaintiffs denied waiver.

The cause came on for trial to judge and jury. At the conclusion of the plaintiff's case, defendant moved for a directed verdict, which was overruled. At the conclusion of the whole case, defendant renewed its motion, and the plaintiffs also moved for judgment. Whereupon the jury was dismissed, and the judge determined the issues in favor of defendant. Motion for a new trial was filed and overruled,

and judgment entered for defendant. From this action this proceeding in error is prosecuted.

The case rests upon a proper construction of Sections 5 and 8 of the contract between John Gill & Sons and the subcontractor National Fire Proofing Company, the defendant, and upon determination of the question whether defendant breached either of these sections.

Section 5 reads, in so far as pertinent:

"5. The Sub-Contractor agrees, in the performance of this contract, to observe and comply with all laws, ordinances, and regulations of all constituted authorities relating to the manner of doing the work under this contract or to the materials supplied thereon; and also that the Sub-Contractor will, at his own cost and expense, provide insurance and Compensation Insurance fully covering and indemnifying the Owner, the Contractor and the Sub-Contractor, as their respective interests may appear, and to the satisfaction of the Engineer and the Contractor, against any loss because of injury or damage to persons or property during the performance of this contract, and will furnish proper certificates to the Contractor evidencing compliance with these provisions; and the Sub-Contractor shall also obtain all necessary permits and make all necessary measurements at the building, and shall also provide and maintain guards and any other necessary protection to workmen."

The court held that that portion of Section 5 which required the defendant to "provide and maintain guards and any other necessary protection to workmen" did not enjoin upon it the obligation of erecting a barricade or other protection for its workmen.

This conclusion no doubt was reached in the main because of the testimony of John Snead, the supervising architect of the Terminal building.

We quote from the record the following portion of the general contract, which defendant was required to observe. ''Wherever the words necessary and proper or words of like import are used throughout these specifications with reference to the extent, condition or character of the work specified, it is then understood that the said work shall be carried out to the extent and in such a condition and in such a manner or be of such a character as is necessary and proper under the circumstances in the opinion of the architect, and the architect's judgment in such matters shall be considered final.''

This question was put to Mr. Snead: ''Now, taking into consideration the contract in this case, that is, the contract and the sub-contracts, the usages of the industry, was there any necessary protection to workmen, to the deceased Berchtold, that was not installed by the defendant on or before June 1st, 1927, to your knowledge?''

His answer was, ''No.''

There were moving reasons to support the claim of plaintiffs on this disputed question: such as the physical fact that a shelf, canopy or barricade above plaintiff's working men on the wall would have lessened the danger to Berchtold, and possibly saved him; the admission of defendant of its liability under the subcontract in the letter to John Gill & Sons of date of August 17, 1927.

But the matter for determination was one of fact, with the judge exercising the wide powers of a jury. We therefore are of the opinion that in the light of

the portion of the record quoted, and other testimony of like character touching the necessity of defendant erecting a barricade at or above the first floor, the trial court committed no prejudicial error in resolving the issue in favor of the defendant.

Section 8 of the subcontract reads:

"8. The Sub-Contractor shall at all times indemnify and save harmless, the Contractor and Owner from all loss, cost, damage or expense suffered or incurred resulting from any failure on the part of the Sub-Contractor to observe and comply with the provisions of this contract, or resulting from any claim for negligence or carelessness in the protection of workmen in the performance of the work or the use of defective materials or otherwise; and the Sub-Contractor also agrees that, in case of any claim being made or action instituted for carelessness of the Sub-Contractor resulting in loss or damage to person or property, the Sub-Contractor shall indemnify and save harmless the Contractor and Owner against any judgments, costs, expense or damages in connection therewith, and a proper and sufficient amount of the contract price may be retained by the Contractor as its indemnity, pending the determination, settlement or adjustment of such claim or suit.

"The Sub-Contractor further agrees to indemnify and hold the Owner and Contractor harmless from any and all loss or damage which the Owner and Contractor, or either of them, may sustain on account of any claim, demand or suit made or brought against the Owner and/or Contractor by or on behalf of any employee of the Sub-Contractor, or by or on behalf of any person injured by the Sub-Contractor, his servants, agents or employees."

We restate that portion of Section 8 with which we are more particularly concerned: ''The Sub-Contractor further agrees to indemnify and hold the Owner and Contractor harmless from any and all loss or damage which the Owner and Contractor, or either of them, may sustain on account of any claim, demand or suit made or brought against the * * * Contractor by or on behalf of any employee of the Sub-Contractor.'' This language is sufficiently definite in our judgment to bind the subcontractor to indemnify the contractor for any and all loss or damage sustained by the contractor by reason of any claim (growing out of injuries sustained by any workman in defendant's employ while at work under the subcontract) made against it by or on behalf of any employee of defendant. This is broad enough to include, not only claims arising because of loss occasioned by negligence of the defendant, but by loss or damage brought about by the negligence of the general contractor.

The doctrine of *ejusdem generis* does not apply. The language under consideration occurs in a new and separate paragraph from the general subject-matter preceding it. This paragraph begins by stating that it is a further agreement to indemnify. If we construe it as contended by defendant, it adds nothing whatever to the contract.

Notwithstanding the restrictions which are placed upon contracts of indemnity such as the one we have under consideration, as expressed by the Ohio Supreme Court in *Dingledy Lumber Co.* v. *Erie Rd. Co.*, 102 Ohio St., 236, 131 N. E., 723, the language employed in Section 8 is plain, unequivocal and definite in its meaning. However, the rule in the case just

cited, and particularly the following portion of the opinion found on page 242 of 102 Ohio State, 131 N. E., 723, 725, are applicable in another connection: "The liability of such indemnitee is regarded to be so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the liability unless the contract puts it beyond doubt by express stipulation. It cannot be established by inference from words of general import."

It will be noted that the indemnity provided extends to claims made "by or on behalf of any employee of the subcontractor." The claim in this case was made by reason of the death of an employee of the subcontractor, but it was not made by or on his behalf. The plaintiffs are held to the strict limits of the language employed in the contract under consideration, and it is not broad enough to include an action for wrongful death, because such action is not brought by or on behalf of any employee of the subcontractor.

Other questions are presented and argued, but we discuss only those which we feel necessary to our decision.

We therefore affirm the judgment of the trial court.

*Judgment affirmed.*

KUNKLE and FARR, JJ., concur.

Judges HORNBECK and KUNKLE, of the Second Appellate District, and Judge FARR, of the Seventh Appellate District, sitting by designation in the Eighth Appellate District.