[Civ. No. 12480.   Second Dist., Div. One.—June 12, 1941.]

ROBERT C. BRANDENBURG et al., Appellants, v. LOS ANGELES COUNTY FLOOD CONTROL DISTRICT, Respondent.

Baldwin Robertson and Russell Breckenridge for Appellants.

J. H. O'Connor, County Counsel, S. V. O. Prichard, Assistant County Counsel, and Arthur Loveland, Deputy County Counsel, for Respondent.

WHITE, J.—This is an appeal from a judgment entered in defendant's favor after the trial court had sustained a demurrer to plaintiffs' third amended complaint without leave to amend.

The third amended complaint presents two causes of action, the first of which asserts that plaintiffs' son met a "wrongful

death'' by reason of an ''attractive nuisance'' which existed at one of defendant's projects and was not properly guarded against, by reason of the claimed negligence of certain engineers of the United States of America and of the flood control district. In general, the allegations charge that prior to the 18th day of December, 1937, the defendant flood control district entered into an agreement with the United States of America, under the terms of which the latter agreed to furnish the funds necessary for certain construction and improvement work on the banks and channel of the Los Angeles River and to perform said work by and through its corps of engineers. It is further alleged that the parties to such agreement intended thereby that defendant flood control district should be and would become liable to any third person for any and all damage, both personal and property, that might be caused by or result from such construction work or the manner of performance thereof by the United States or its officers or engineers; and further, that such liability on the part of defendant flood control district should be independent of any liability or limitation otherwise existing by law. It is then alleged that pursuant to the terms of the agreement work was commenced by the corps of engineers of the United States; that prior thereto it had been the custom and habit of children residing in the neighborhood, including the deceased son of plaintiffs, to play on the banks of and wade and play in the river itself; that up to the time of the commencement of the construction work the condition of the banks and the river bed was such that it had always theretofore been safe for such recreational activities on the part of neighborhood children. Then follow detailed allegations as to the manner in which the engineers in charge of said construction negligently caused a pit to be dredged in the river bed and negligently allowed large pieces of board or wood to gather in the channel; that the earth dredged from the pit was by the engineers negligently deposited along the side thereof nearest to the center of the channel and opposite the nearest bank of the river, and that while the same was similar in appearance to the natural bank thereof, it was in fact of soft and loose composition so as to render walking or standing thereon unsafe for any person. The ensuing allegations set forth the fact that on the day of the fatality the minor son of plaintiffs, being unaware of the depth of the

water in the pit and the loose and dangerous condition of the bank, attempted to float downstream on one of the boards above-mentioned, whereupon the current of the river carried him from the point above the pit out and into the deep water of the pit through which water was being diverted; that upon discovery of the depth of water therein the decedent, being in fear of his life and confronted with such imminent danger, directed the board on which he was floating toward the newly-created bank of the river and stepped from the board onto the bank, whereupon the earth composing the bank immediately caved in on top of him, sliding down on him until it had forced him down to the bottom of the pit, and by reason of this slide of earth plaintiffs' minor son was killed either by drowning or suffocation. The first cause of action charges that the death of said minor was the direct and proximate consequence of the carelessness and negligence of the defendant flood control district and of the United States engineers performing the construction work.

In the second cause of action all the facts alleged in the first are repleaded by reference, with the exception of the allegations concerning the contractual assumption of liability by the defendant and the allegation that the defendant and the United States, its officers and agents, were jointly and severally negligent in the premises. In place of these allegations it is alleged in the second cause of action that the defendant flood control district failed to adequately maintain the project after it had been started and that the death of the child and the damage to plaintiffs was proximately caused by such failure on the part of defendant flood control district, regardless of any purported delegation of the alleged statutory duty to the United States.

It is conceded that respondent flood control district must be deemed a public agency created for a public purpose, and as such is not subject to an action for damages resulting from the negligence of its officers or agents in the absence of a statute expressly imposing such liability. However, appellants contend that a parent's cause of action against a state agency for the wrongful death of a child proximately resulting from the method of operation employed in the course of construction of a public project is expressly authorized by section 14 of article I of our state Constitution, which pro-

vides that the state cannot take or damage private property for a public use without the payment of just compensation. At the oral argument of this cause appellants conceded that a child is not a chattel and that the parents have no property right in him, but they contend that the statutory cause of action inuring to the parent for the wrongful death of a child (Code Civ. Proc., sec. 376) is a property right, and that the injury to the plaintiffs here sued upon is an injury to that property right and therefore within the contemplation and meaning of the above-quoted constitutional provision. However, plaintiffs are not aided by the concession that such fully accrued cause of action for wrongful death of a minor child constitutes ''property'' in the possession of the parent, because from whatever angle we view plaintiffs' complaint, it does not charge that the ''fully accrued'' cause of action which they claim to be ''property'' was proximately taken or damaged by the public improvement undertaken by defendant in the Los Angeles River. ■ Their claim is, rather, that their son, in whom they could have no property right, was taken, and that by such ''taking'' a cause of action arose for such wrongful death. And plaintiffs therefore are confronted with the fact that there exists no consent by the sovereignty to be sued in an action for wrongful death. (*Whiteman* v. *Anderson-Cottonwood Irr. Dist.*, 60 Cal. App. 234 [212 Pac. 706].)

■ It is next contended by appellants that the flood control district, in the exercise of its authorized powers, assumed liability and consented to suit for all classes of damage caused by the United States in the construction of the flood control project, as a joint tort-feasor. This claim is predicated upon the following provision contained in the agreement between the flood control district and the government: ''The District further agrees to assume all liability for damages caused by or incident to the construction of said flood control projects by the government, and to hold The United States of America, its officers and agents, free and harmless from all claims for damages which might be filed or asserted by any person whomsoever, as a result of said construction work.''

In other words, appellants seek to impute to the respondent flood control district the negligence of the United States engineers by reason of the aforesaid contract whereby the former agreed to hold the United States free and harmless

from all claims for damages "as a result of said construction work". Let us therefore analyze section 15a of the Los Angeles County Flood Control Act, added in 1935, Stats. 1935, p. 1003 [Deering's Gen. Laws, 1937, Act 4463]), which it is claimed by appellants enlarges the liability of defendant district. The cited section reads as follows: "The governing body of said district shall have full authority to cause to be inserted in specifications and contracts for any flood control work financed or paid for in whole or in part out of moneys obtained from the United States of America or any department or agency thereof as a loan, grant or appropriation, such provisions or terms as may be prescribed by the United States of America or such department or agency as a condition upon which such Federal funds are loaned, granted or appropriated."

We cannot read into this section an authorization for the district to indemnify the United States of America against damages resulting from the negligence of agents of the federal government engaged in flood control district construction work, because, first of all, such an indemnification is unnecessary, for the reason that the United States is liable to suit only upon claims not sounding in tort. While there are some elements of damage resulting from the construction of public projects for which the United States could be held accountable, the instant case is not one of them, because it sounds in tort. Surely the legislature never intended by the enabling act, nor did either the federal government or the flood control district intend by the contract, that the California public agency should indemnify the federal government against a liability that did not exist. Furthermore, the flood control district was not empowered under the act creating it to voluntarily assume the role of a joint tort-feasor.

It is true, as urged by appellants, that the specific legislative act creating a flood control district (Stats. 1915, p. 1502 [Deering's Gen. Laws, 1937, Act 4463]), provides in section 2 thereof that the district may "sue and be sued". Appellants concede that the courts of this state have uniformly held that the just-quoted language does not enlarge the liability of the public agency and applies only to such actions as a public corporation might be subject to in carrying out its purposes. (*Whiteman* v. *Anderson-Cotton Irr. Dist., supra; Western Assur. Co.* v. *Sacramento etc. Drainage Dist.,* 72 Cal.

App. 68 [237 Pac. 59]; *Nissen* v. *Cordua Irr. Dist.*, 204 Cal. 542 [269 Pac. 171].) However, appellants contend that the announced rule has been abrogated by a decision of the Supreme Court of the United States (*Keifer & Keifer* v. *Reconstruction Finance Corp.*, 306 U. S. 381 [59 Sup. Ct. 516, 83 L. Ed. 784]), holding, in effect, that although a government has the power to extend its immunities to its corporate agencies or subdivisions, *it must do so specifically,* and that a general grant of power "to sue and be sued" constitutes a waiver of all immunity, since it contains no specific grant of such immunity. It appears, however, that in the cited United States Supreme Court case that tribunal was interpreting a congressional policy in the matter of rendering the corporate creatures of congressional action amenable to suit, and because but two instances were brought to the attention of the court wherein Congress had not explicitly provided that such corporate entities should be subject to suit, the court gave a liberal construction to the words "to sue and be sued" as used in the federal legislation creating government corporations. Consequently, by reason of the long line of decisions by the courts of this state construing California statutes adversely to appellants' contentions advanced herein, we are constrained to hold that such decisions are not only binding upon us, but are equally binding and controlling upon the federal courts. (*Scott* v. *Austin,* 58 Cal. App. 643, 646 [209 Pac. 251].)

Finally, appellants urge that a statutory consent to the instant suit is furnished by Act 9178 of Deering's General Laws (Stats. 1931, p. 1369), which provides generally for the creation of flood control and water conservation districts, and which legislation reads in part as follows:

"Sec. 9. Trustees shall make proper rules and regulations for the management and control of the works and projects of the district and it shall be the duty of the trustees to adequately maintain all works and projects of the district after the same are started.

"Sec. 10. The negligence of a trustee or trustees of a flood control and water conservation district shall be imputed to the district to the same extent as if the water conservation and flood control district were a private corporation, and such district shall have power and authority to levy assessments

o

for the purpose of paying any damage so incurred as hereafter provided."

It is claimed by appellants that their second cause of action is based upon the quoted sections, but the allegations contained in said second cause of action make no mention of the flood control district trustees, nor is any charge of negligence on the part of such trustees pleaded in connection with any duty devolving upon them. We cannot speculate or infer that the district trustees were negligent. For aught that appears in the pleading, the alleged failure "to adequately maintain its said works and project after the same had been started" might be attributable to the dereliction of the United States engineers or other employees, notwithstanding express orders or directions from the trustees. Certainly the second cause of action contains no averment that the district trustees failed or neglected to perform any duty imposed upon them. Moreover, we feel that the two sections above quoted cannot be held to apply to the Los Angeles County Flood Control District. The latter was created in 1915 by a special act of the California legislature. (Stats. 1915, p. 1502 [Deering's Gen. Laws, 1937, Act 4463].) The act from which appellants quote was enacted in 1931 as a general law relating to the subject of flood control and water conservation districts. It is permissive only, and the commencement of any proceeding under it requires the application or petition of the landowners of a given area, while the functions of the Los Angeles County Flood Control District are mandatory. The latter has no alternative but to function and carry out the purposes of the act, which contemplates the safeguarding of life and property from damage or destruction by flood waters. A special district validly created by the legislature is not changed in one of its essential attributes, such as liability, by a subsequently enacted general law authorizing the creation of permissive districts, possessed of entirely different attributes. This is especially true where the general law makes no mention, directly or inferentially, of an intention or purpose to change, amend or alter the character of existing districts which are the offspring of special creative acts of the legislature. Consequently Act 9178 cannot be held to determine for or impose upon Los Angeles County Flood Control District any added liability.

From the foregoing it follows that the judgment must be affirmed. It is so ordered.

York, P. J., and Doran, J., concurred.