Robert F. RUDDY, Plaintiff,

v.

NEW YORK CENTRAL RAILROAD COMPANY, Defendant and Third-Party Plaintiff,

ATLAS TACK CORPORATION, Third-Party Defendant.

Civ. 5036.

United States District Court, N. D. New York.

Sept. 30, 1954.

McElroy, Young, Mahley & Dunn, Syracuse, N. Y., Gordon H. Mahley, Syracuse, N. Y., of counsel, for plaintiff.

Kernan & Kernan, Utica, N. Y., Willis D. Morgan, James S. Kernan, Jr., Utica, N. Y., of counsel, for defendant and third-party plaintiff, N. Y. Cent. R. Co.

Mackenzie, Smith & Mitchell, Syracuse, N. Y., George S. Sullivan, Neal P. McCurn, Syracuse, N. Y., of counsel, for third-party defendant, Atlas Tack Corp.

FOLEY, District Judge.

A general verdict in the substantial amount of $125,000 was returned by a jury in favor of plaintiff, Ruddy, against the defendant, New York Central Railroad Company. This action was the usual one by a railroad employee against the railroad employer under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. As I recall from my memory and rough notes, the evidence established that at the time and previous to the accident involved, Ruddy, as a brakeman, was riding on the side of the head end of a freight car which was being pushed by a Diesel engine along a side track into the premises of the Atlas Tack Corporation. At or near a point on such side track between two buildings of the Atlas Tack Corporation, the freight car derailed and Ruddy was squeezed and pinned between the side of the freight car and the side of the Atlas building on the easterly side of the track, described throughout the trial as a storage warehouse. His injuries were most severe.

The trial of the issues between Ruddy and the railroad was infused necessarily by the contest and dispute on the cross-claim and action by the Railroad over against the Atlas Tack Corporation, the third-party defendant. However, it is my judgment that the issues of negligence, contributory negligence, diminution and award of damages were fairly and competently presented by the attorneys, together with a sincere attempt on my part to ward off any confusion in the minds of the jury that might arise from the cross-claim controversy. The general verdict in behalf of the plaintiff, in my judgment, is supported by the evidence. The substantial amount of money damages is commensurate with the injuries sustained by the plaintiff, which, from the medical testimony, are horrible, crippling and mostly permanent, with a dim outlook of repair by operations and future medical treatment. The factual issues were decided by the jury, and there is nothing pointed out to me of substance that would warrant the setting aside of the verdict and the granting of a new trial in this action. The motions in writing by the defendant railroad for a directed verdict and in the alternative to set aside the verdict and grant a new trial are denied in this main action.

I am frank to say I do not have the same ease of decision, whether it be right or wrong, in the disposition of the problem involved in the cross-claim by the railroad, New York Central, against the third-party defendant, the Industry, Atlas Tack Corporation. As I recall, the attorneys agreed that a general verdict should be taken in the main action, and a special verdict with written answers by the jury to written questions pursuant to Rule 49(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., in the cross-claim action. The special verdict procedure is a simple one, easily adaptable to obtain categorical answers to simple questions upon separate issues of fact. I have used the method with good

results in the past. Singer v. Shaughnessy, D.C., 96 F.Supp. 506, affirmed 2 Cir., 198 F.2d 178.

I took the initiative in the draft of the questions, and in the spirit of the rule, tried to make them as simple as possible. Much of the terminology I adopted from the words of the side track agreement made between the Railroad and the Industry, with the thought in mind that the phraseology they adopted would best express their true intent in the contract. There was a conference with the attorneys, and after some change in language the form and substance of the first four questions were agreed upon. The attorneys for the railroad objected to the form, content and submission of questions "5", "6" and "7", and asked for the substitution of five submitted questions in their place. The form and content of these questions seemed confusing to me, and difficult of instruction and explanation to the jury, and I rejected them. All the questions were answered by the jury "Yes" or "No" in the special verdict.

The Railroad is satisfied with the answer to question "2" and dissatisfied with the other answers. The Industry, Atlas Tack Corporation, is happy with all the answers but the answer to question "2". The Railroad and the Atlas Tack Corporation moved for directed verdicts at the close of the evidence, and I reserved decision upon such motions. A mass of motions covering every possible detail and alternative is now submitted by the Railroad in writing. Essentially, the motion for a directed verdict, reserved upon, is renewed, and if such direction is not made, challenges are made to set aside specific answers of the special verdict except the answer to question No. "2", and for judgment notwithstanding such answers, or in the alternative, for a new trial, partial or complete.

The Atlas Tack Corporation, with more simplicity, renews its motion for directed verdict, moves for directed judgment n. o. v., and in the alternative, moves to set aside the affirmative answer to question No. "2", and for a new trial on this issue alone, or in the event of denial of its motion, to set aside the entire special verdict and grant a new trial.

■ As the Atlas Tack Corporation argues in its written motion, it is clear it was the intent of the jury, by its answers, to relieve the Atlas Tack Corporation from responsibility for the accident and resulting injury. However, the design of the special verdict procedure is to obtain answers to questions of fact with the knowledge of the jury limited as to whether its findings will favor one side or the other. Skidmore v. Baltimore & O. R. Co., 2 Cir., 167 F.2d 54, 66.

The cross-claim is based upon particular provisions of an agreement between the Railroad Company and the Industry, entitled: "Private Side Track Agreement", dated January 23, 1947. The important provisions in play and important to this discussion are set forth:

"Third: (b) The Industry shall assume and indemnify and hold harmless the Railroad Company for and from any and all liability, loss and expense (including Workmen's Compensation), resulting from loss of life or injury to persons or damage to property (including employees of either of the parties hereto), arising in whole or in part by reason of or in any way resulting from the presence or maintenance of structures or obstructions, whether shown on said print or otherwise, encroaching upon the aforesaid standard clearances or from the presence of wire or cable lines over or adjacent to said track other than structures or obstructions, wire or cable lines belonging to the Railroad Company or its licensees."

"Fifth: The Industry assumes all responsibility for and shall indemnify and hold harmless the Railroad Company from and against loss or damage to property of the Industry or to property upon the premises of the Industry or upon said track regardless of the Railroad Company's negligence, arising from fire caused

by locomotives operated by the Railroad Company for the purpose of serving said Industry, except to the premises of the Railroad Company and the rolling stock belonging to the Railroad Company or to third parties and to shipments then in the common carrier custody of the Railroad Company.

"Except as herein otherwise specifically provided, in respect of all loss or damage to property, other than by fire caused as aforesaid, or in respect of injury to or death of persons caused by or in connection with the construction, operation, maintenance, use, presence or removal of said track, (a) the Railroad Company shall assume responsibility for and hold the Industry harmless from all losses (including Workmen's Compensation), damages, claims and judgments arising from or growing out of the sole, actionable acts or omissions of the Railroad Company, its agents or employees; (b) the Industry shall assume the responsibility for and save the Railroad Company harmless from all losses (including Workmen's Compensation), damages, claims and judgments arising from or growing out of the sole actionable acts or omissions of the Industry, its agents or employees; and (c) the parties hereto shall equally bear all losses (including Workmen's Compensation), damages, claims and judgments arising from or growing out of the joint or concurring actionable acts or omissions of both parties hereto, their respective agents or employees."

I have included the first portion of Paragraph "Fifth" because of the argument and comparison advanced by the attorneys for the Atlas Tack Corporation that the important phrase "regardless of the Railroad Company's negligence" is contained therein, and not used in Paragraph "Third (b)", upon which the railroad predicates its right for full recovery over against the Industry.

A leading case on the question presented originated in this district, Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.2d 15, 19, certiorari denied 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355. It is pointed out in that authority that in such a situation as here, where we have a finding by the jury that the storage warehouse was a contributing cause to the accident, the question thereupon becomes one for the Court and the contract, being made in New York, is to be decided by the law of New York. A good review of the important New York authorities is set forth and the principle garnered from the New York Court of Appeals cited cases is expressed succinctly: " * * * that if the indemnitee means to throw the loss upon the indemnitor for a fault in which he himself individually shares, *he must express that purpose beyond any peradventure of a doubt.*" (Italics mine).

The general statement in Schwartz v. Merola Bros. Const. Co., 290 N.Y. 145, 154, 48 N.E.2d 299, 303: "While the parties are free to contract as between themselves for the ultimate burden of liability due to negligence, yet in the absence of explicit language to the contrary, courts will not interpret an indemnity agreement as a promise by the indemnitor to save harmless the indemnitee on account of the active negligence of the latter"; and in Thompson-Starrett Co. v. Otis Elevator Co., 271 N.Y. 36, 41, 2 N.E.2d 35, 37: "It it a general rule long established that contracts will not be construed to indemnify a person against his own negligence unless such intention is expressed in unequivocal terms", together with the expression emphasized above in the Mostyn case, lend weight to the argument that under the New York theory, nothing much less than a flat statement in plain words will suffice to exempt from liability where the indemnitee shares in the wrong.

Semanchuck v. Fifth Ave. & Thirty-Seventh Street Corp., 290 N.Y. 412, 422, 423, 49 N.E.2d 507, does not alter the general principle of interpretation where active negligence is involved on the part of the indemnitee, but only emphasizes the

same necessity for "unequivocal expression" despite the kind of negligence, active or passive, where a positive duty is imposed by express terms of a statute.

■ The issue of interpretation in this problem is as clear cut as it can be made. The jury, by its special verdict, found that the accident and injuries were caused solely by the negligence of the Railroad, without concurring negligence on the part of the Industry, and such findings, in my judgment, have support in the evidence and should be accepted. Despite this assumption of active negligence on the part of the Railroad, and the great stress in the New York authorities upon the need for "explicit language and unequivocal terms", I am still constrained to hold that the provisions in this contract, particularly Third (b), when read as a whole, are sufficiently clear, precise, plain and exact in terminology to warrant only the conclusion that the true intent and agreement of the parties was to indemnify the Railroad Company from its own negligence in the specific circumstances found here by a jury in answer to Question "2" to the effect that the accident and injuries were caused to some extent by the presence of the storage warehouse encroaching upon the standard clearance. I am fully cognizant, mainly because of the large amount of money involved, of the harsh and inequitable burden placed upon the Industry by this construction of the agreement, but a continuous reading of the contract, and particularly the important provisions involved, will allow me no other judgment. Such construction was my first impression, and after much reflection remains my last impression. The plainness of the language and the logic of its import, at least to me, justifies the interpretation. If I am in error, the disposition I make seems susceptible to simple Appellate correction.

■ I take this difficult position for these reasons: The law of New York, which is controlling, does not prohibit the making of such indemnification agreement even where active negligence is present upon the part of the indemnitee; nor does it prescribe that the agreement

to indemnify must use any exact phrase as "regardless of the negligence", etc. In Thompson-Starrett Co. v. Otis Elevator Co., 271 N.Y. 36, 42, 2 N.E.2d 35, described as a leading case in Schwartz v. Merola Bros. Construction Co., 290 N.Y. 145, 154, 48 N.E.2d 299, the analysis and discussion of Long Island R. Co. v. American Bridge Co., 175 App.Div. 170, 161 N.Y.S. 543; affirmed 225 N.Y. 692, 122 N.E. 886, led to this statement [271 N.Y. 36, 2 N.E.2d 37]: "The claim came, therefore, within the express terms of the contract of indemnity, and its enforcement was proper, *despite negligence on the part of the indemnitee.*" (Italics mine). This theory, despite the presence of active negligence and the absence of exact words to void such negligence, is upheld again in Langelotti v. City of New York, 268 App. Div. 1061, 52 N.Y.S.2d 672; affirmed 296 N.Y. 941, 73 N.E.2d 260, a case almost current with the Mostyn decision.

Federal cases close in point and reasoning to my interpretation are: Rice v. Pennsylvania R. Co., 2 Cir., 202 F.2d 861; Minneapolis-Moline Co. v. Chicago, M. St. P. & P. R. Co., 8 Cir., 199 F.2d 725; Deep Vein Coal Co. v. Chicago & E. I. Ry. Co., 7 Cir., 71 F.2d 963; Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347.

In the Rice case, Chief Judge Swan affirmed the general rule set forth in the Mostyn case but concluded that where the covenant gives unequivocal expression of the clear intent of the parties to indemnify against one's own negligence, the agreement will be enforced. He further points out that the covenant in The Zeller No. 14, D.C., 74 F.Supp. 538, did not expressly include the placing of the barge in a foul berth, which can reasonably be compared to the covenant here which specifically includes obstructions which encroach upon standard clearance.

The reasoning in the above authorities fits the situation presented. The private side track agreement was one of continuous side track service until terminated by notice of either party. The agreement was detailed in the mutual and single responsibilities and duties in the use, oper-

ation and maintenance of the track. Paragraph Third is most comprehensive on the entire subject of obstructions, clearances and warnings, and the responsibilities and duties of the parties in reference thereto. Paragraph Third (b) stands out in my judgment as a red light on the track with agreement in specific and exact words to assume, indemnify and hold harmless the railroad for " * * * * injury to persons * * * (including employees of either of the parties hereto), arising in whole or in part by reason of or in any way resulting from the presence * * of structures * * * whether shown on said print or otherwise * * * encroaching upon the aforesaid standard clearances * * * ".

There seems little dispute that the storage warehouse encroached to some extent upon the standard clearance and the jury has decided that such encroachment was a contributing cause to the accident. Paragraph Third (b) is as specific as intelligent draftsmanship allows in the pinpointing of the obligation assumed, and it seems obvious that the Railroad Company recognized the usual hazard of close clearance in railroad work and reasonably sought the indemnity it now seeks to enforce before undertaking such private service. It may well be that the addition of the phrase "regardless of the Railroad Company's negligence" would have been the ultimate "unequivocal expression", but I cannot decide, in good conscience, that the lack of such phrase nullifies the particularized paragraph, and makes it mere surplusage and meaningless.

Nor do I see merit in the contention that it must be read with the general negligence provisions set forth in Paragraph Fifth of the agreement. Such provisions as to the responsibilities for sole and concurring acts of negligence are preceded by the important words: "Except as herein otherwise specifically provided." To overlook this important exception and read this general paragraph with the particular and definite paragraph would be a strained meshing and directly against the express words in Third (b) "to assume and indemnify and hold harmless." See Deep Vein Coal Co., supra.

The motion by the Atlas Tack Corporation at the close of the evidence which was reserved upon, and the renewal of such motion in writing for a directed verdict is denied. The motion by the Atlas Tack Corporation for a directed verdict, notwithstanding the special verdict, is denied, and the motions by the same party to set aside particularly the answer to question No. "2", and generally the special verdict, and for a new trial in either instance, are denied.

The findings of the special verdict are accepted, and judgment is directed to enter upon such special verdict in the cross-claim for the third-party plaintiff, New York Central Railroad Company, against the third-party defendant, Atlas Tack Corporation, for the entire amount of the verdict and the recovery had in the action Robert F. Ruddy against New York Central Railroad Company.

The motions by the New York Central Railroad Company for a directed verdict in the main action involving Plaintiff, Ruddy, against it, and to set aside the general verdict and grant a new trial are denied, as previously indicated herein.

Appropriate orders of denial and judgment in the cross-claim shall be submitted accordingly. Agreement should be had as to form and content, otherwise settled on five days' notice.