341 P.2d 460

**METROPOLITAN PAVING COMPANY, Inc., a Corporation, Defendant-Appellant,**

v.

**GORDON HERKENHOFF & ASSOCIATES, INC., Third-Party Defendants-Appellees.**

No. 6494.

Supreme Court of New Mexico.

July 8, 1959.

Rodey, Dickason, Sloan, Akin & Robb, Keleher & McLeod, Russell Moore, Albuquerque, for appellant.

Howard F. Houk, Santa Fe, for appellee.

LUJAN, Chief Justice.

This is an appeal from an order of the district court granting summary judgment for third-party defendant, Gordon Herkenhoff and Associates, Inc., hereafter referred to as Herkenhoff.

On October 3, 1957, plaintiffs (who are not parties to this appeal) filed a complaint against the City of Santa Fe, hereinafter referred to as City and the Metropolitan Paving Company, Inc., hereinafter referred to as Metropolitan.

The complaint alleged that sometime prior to August 24, 1957, Metropolitan constructed a detour extending from Alameda Street in the City across the Santa Fe River over which area the City had control. The complaint further alleged that Metropolitan in constructing the detour installed two iron or steel culverts to provide a channel for water flowing down the river, which culverts were then covered with dirt fill and a black-top surface, and that the culverts were so installed as to change the channel of the river and limit its carrying capacity. The complaint went on to allege that due to the negligence of Metropolitan and the City the culverts became clogged and water which would have run down the original channel of the river had the detour not been constructed overflowed causing damage to plaintiffs' properties.

The answer by Metropolitan constituted, in effect, a general denial, and as affirmative defenses alleged contributory negligence and that any damage was the result of an "Act of God". In addition, it alleged that if there was any negligence which caused damage to plaintiffs' properties it was negligence on the part of other agents for the City.

The City denied generally the allegations of plaintiffs' complaint, and as affirmative defenses alleged contributory negligence, assumption of risk and that any injury or damage to plaintiffs' properties was due to an unavoidable accident or an "Act of God".

The City filed a cross-claim against Metropolitan alleging that it had entered into a contract with Metropolitan for the construction of a bridge across the Santa Fe River and that under the terms of this

contract Metropolitan had agreed to indemnify and save the City harmless from all suits brought against the City by reason of the construction of the bridge.

The City also filed a third-party complaint against Herkenhoff, the engineering firm that had prepared the plans for the construction of the bridge including the detour. The City alleged that Herkenhoff had prepared the plans and in them had specified the type and size of the culverts which Metropolitan subsequently installed. The City further alleged that should it be found that the culverts called for under the Herkenhoff plans and specifications were insufficient, and such insufficiency caused the overflow, as alleged by plaintiffs, then the proximate cause of the damage was the failure of Herkenhoff to properly design the construction and Herkenhoff's failure to require culverts which would be sufficient to carry the water flowing down the Santa Fe River.

Thereafter, Metropolitan filed a counterclaim against Herkenhoff with substantially the same allegations as contained in the third-party complaint of the City.

Herkenhoff filed a motion to dismiss the third-party complaint of the City and the counterclaim of Metropolitan, or, in the alternative, for summary judgment. Attached to and in support of this motion was an affidavit of Gordon Herkenhoff, President of Gordon Herkenhoff & Associates, Inc. The trial court granted Herkenhoff's motion for summary judgment and Metropolitan appeals therefrom.

According to the affidavit executed by Herkenhoff (and the facts as stated in this affidavit have not been controverted), a contract was entered into between Metropolitan and the City on March 27, 1957, which contained certain indemnity provisions for the protection of both Herkenhoff and the City.

The sole question to be answered on this appeal is whether these indemnity provisions have the effect of relieving the indemnitees from liability for their own negligent acts.

Appellant makes no argument that in a case such as this a contract which purports to indemnify a person against his own negligence is void as against public policy. However, he does urge, in effect, that a contract will not be construed as indemnifying the indemnitee against his own negligence unless the contract *expressly* so provides. Appellee, on the other hand, contends that the contract does not have to refer expressly to indemnitee's negligence as a prerequisite to his being held harmless for his own negligence, so long as the intention to save him harmless in such an eventuality is clear and unequivocal. With this generally accepted rule appellee has no quarrel. Nor do we. See, e. g., Prince-

mont Const. Corp. v. Baltimore & Ohio R. Co., D.C.Mun.App., 131 A.2d 877.

Examining the indemnity provisions contained in the contract between Metropolitan and the City of Santa Fe, we find that one such provision is as follows:

"30. Damages. The Contractor hereby expressly binds himself to indemnify and save harmless the City and its Engineer from all suits and actions of every nature and description brought against the City or any person or persons on account of the construction of this work *or* by reason of any act of omission, misfeasance, malfeasance of the Contractor or his agents, subcontractors or employees." (Emphasis added.)

Further, Herkenhoff's affidavit states as follows:

"* * * a construction bond was entered into by Metropolitan Paving Company, Inc., as principal and Union Pacific Insurance Company of Tacoma, Washington, as surety, and made a part of the March 27, 1957 contract aforesaid, wherein said principal and surety bound themselves unto the City of Santa Fe, defendant and Third Party Plaintiff, in the penal sum of $446,634.-65 conditioned, among other things, on their defending, indemnifying, and saving harmless the City of Santa Fe

against all damages, claims, demands, expense, and charge of every kind (including claims of patent infringement) arising out of the injury or damage to persons *or* property by reason of said contract and the work thereunder required of him or arising from any act, omission *or* neglect of said contractor (Metropolitan Paving Company, Inc.), his agents, servants, or employees with relation to said work, and conditioned further upon their delivering the work as therein specified to the City of Santa Fe, completed and free from all liens, encumbrances or claims for labor, material, or otherwise." (Emphasis added.)

The affidavit also states that a construction bond was required, furnished and conditioned for the protection of appellee Herkenhoff as well as other firms and persons who might be damaged by the work to be done under the contract.

■■ In our opinion the all-embracing language used in the indemnity provisions clearly indicates an intention to save harmless the City and its engineer, the appellee, from all liability incurred in the prosecution of the work, even though it might arise out of their own negligence. To us this is sufficient. We do not feel that an express reference to indemnitee's negli-

gence is necessary as a condition precedent to his being held harmless for his own negligence.

While the decisions in the various jurisdictions are not entirely harmonious on this question, numerous well-reasoned cases construing indemnity provisions substantially the same as the one here involved support us in our conclusion.

The court stated as follows in Stern **v.** Larocca, 49 N.J.Super. 496, 140 A.2d 403, 407:

> "By the overwhelming weight of authority, something less than an express reference in the contract to losses from the indemnitee's negligence as indemnifiable will suffice to make them so if the intent otherwise sufficiently appears from the language and circumstances."

The Washington court stated this principle as follows in Griffiths v. Henry Broderick, Inc., 27 Wash.2d 901, 182 P.2d 18, 20, 175 A.L.R. 1:

> "The appellant stresses the fact that the word 'negligence' does not appear in the indemnity covenant, and contends that it is, therefore, manifest that the indemnity clause of the contract is equivocal. We think counsel's contention is well-answered in Payne v. National Transit Co., D.C., 300 F. 411,

412, 413. The indemnity covenant in that case read as follows: 'Said party of the second part does further agree to indemnify and save harmless the party of the first part from and against all claims, suits, damages, costs, losses, and expenses, in any manner resulting from or arising out of the laying, maintenance, renewal, repair, use, or existence of the said pipe (whether heretofore or hereafter laid), including the breaking of the same or the leaking of oil from the same.' "

> "In holding that the above covenant provided that the indemnitor should indemnify the indemnitee against the indemnitee's own negligence, the court said: 'It is true that the courts have said that, in order to indemnify against the indemnitee's negligence the language must be clear and unequivocal; but *I do not understand that the indemnifying contract must contain express words against negligence. If it is clear from the language used, that it was intended to cover losses arising from the negligence of the indemnitee this is sufficient.'* " (Emphasis added.)

The court then went on to quote the following statement from Southern Pacific Co. v. Fellows, 22 Cal.App.2d 87, 71 P.2d 75, 77:

"The indemnity clause in the contract, undertaking, as it does, to indemnify railroad company from and against *any and all* claims, loss, damage, *injury and liability howsoever the same may be caused, resulting directly or indirectly from work* covered by this agreement,' is so sweeping and all-embracing in its terms that, although it does not contain an express stipulation indemnifying appellant against liability caused by its own negligence, it accomplishes the same purpose."

In the instant case the contractor expressly bound himself to save the indemnitees harmless "from all suits and actions of every nature and description brought * * on account of the construction of this work." Perhaps the "ultimate" unequivocal expression, would have been to add "regardless of negligence on the part of the City or its engineer." However, the better reasoned cases do not require such a phrase when, as here, the intent to cover all damages arising by reason of the construction of the work is clearly manifest. Ruddy v. New York Central Railroad Company, D.C., 124 F.Supp. 470.

The 1957 case of Fosson v. Ashland Oil & Refining Company, Ky., 309 S.W.2d 176, 177, involved an indemnity provision much like the one in this case. Certainly it was no broader in scope. It provided that:

"The Contractor shall indemnify the Owner against all claims, demands, liens, taxes, loss or damages of any character suffered by the Owner and shall save the Owner harmless from all liability growing out of or incurred in the prosecution of said work or arising from any operations, acts, or omissions of the Contractor."

In holding that the above quoted provision clearly evinced an intention to indemnify the owner against the results of the owner's own negligence, the court stated as follows at page 178:

"Unless there was required specifically the statement 'including the owner's own negligence', we can hardly envision a more inclusive indemnity provision."

Indemnity provisions substantially identical with that contained in the contract between Metropolitan and the City have been construed as indemnifying the indemnitee against his own negligence in numerous other cases. Russell, for Use of Continental Casualty Co. v. Shell Oil Company, 339 Ill.App. 168, 89 N.E.2d 415; Buckeye Cotton Oil Co. v. Louisville & N. R. Co., 6 Cir., 24 F.2d 347; James Stewart & Co. v. Mobley, Tex.Civ.App., 282 S.W.2d 290; Princemont Const. Corp. v. Baltimore & Ohio R. Co., D.C.Mun. App., 131 A.2d 877; Buffa v. General Motors Corporation, D.C., 131 F.Supp. 478; Rice v. Pennsylvania R. Co., 2 Cir., 202 F.2d 861; Fire Association of Philadelphia

v. Allis Chalmers Manufacturing Company, D.C., 129 F.Supp. 335.

In view of what we have said above, it follows that the lower court properly granted appellee's motion for summary judgment. The judgment is therefore affirmed.

It is so ordered.

COMPTON, J., and GARNETT R. BURKS, District Judge, concur.

McGHEE, Justice (dissenting).

The rule proposed by the appellant appears in 175 A.L.R. 30 and reads as follows:

"In the overwhelming majority of the cases the result reached by their interpretational efforts can be condensed into the simple rule that where the parties fail to refer expressly to negligence in their contract such failure evidences the parties' intention not to provide for indemnity for the indemnitee's negligent acts."

A footnote states that there are literally hundreds of cases supporting this proposition and cites the following as illustrating its universal application: Sinclair Prairie Oil Co. v. Thornley, 10 Cir., 1942, 127 F.2d 128; Southern R. Co. v. Coca Cola Bottling Co., 4 Cir., 1944, 145 F.2d 304; United States v. Hartford Accident & Indem. Co., D.C.Conn.1940, 33 F.Supp. 859, reversed on other grounds 2 Cir., 1941, 117 F.2d 503; The Zeller No. 14, D.C.N.Y.1947,

74 F.Supp. 538; Brandenburg v. Los Angeles County Flood Control Dist., 1941, 45 Cal.App.2d 306, 114 P.2d 14; Marshall v. Maryland, D. & V. R. Co., 1921, 1 W. W.Harr. 170, 31 Del. 170, 112 A. 526; Fisk Tire Co. v. Hood Coach Lines, 1936, 54 Ga.App. 401, 188 S.E. 57; Indianapolis, P. & C. R. Co. v. Brownenburg, 1869, 32 Ind. 199; Mitchell v. Southern R. Co., 1903, 124 Ky. 146, 74 S.W. 216, 24 Ky.Law Rep. 2388; Buford v. Sewerage & Water Bd., La.App.1937, 175 So. 110; New York Cent. & H. R. R. Co. v. T. Stuart & Son Co., 1927, 260 Mass. 242, 157 N.E. 540; Northern Pac. R. Co. v. Thornton Bros. Co., 1939, 206 Minn. 193, 288 N.W. 226; Central Surety & Ins. Corp. v. Hinton, 1939, 233 Mo.App. 1218, 130 S.W.2d 235; Thompson-Starrett Co. v. Otis Elevator Co., 1936, 271 N.Y. 36, 2 N.E.2d 35; Standard Accident Ins. Co. v. National Fire Proofing Co., 1931, 39 Ohio App. 1, 176 N.E. 591; Southern Pac. Co. v. Layman, 1944, 173 Or. 275, 145 P.2d 295; Griffiths v. Henry Broderick, Inc., 1947, 27 Wash.2d 901, 182 P.2d 18, 175 A.L.R. 1; Finkelstein v. Brant, 1929, 198 Wis. 527, 224 N.W. 743; Toronto v. Lambert, 1916, 54 Can SC 200, 33 DLR 476, Ann.Cas.1918D, 57.

The appellees offer a rule adopted by the majority to the effect that negligence need not be expressly referred to if the language used by the parties indicates the intention that negligence of the indemnitee is included in the agreement. The majority

seeks to bolster the adoption of the minority rule by saying the cases they cite are the "better reasoned," but I disagree with such statement. Since there are no New Mexico cases on this point, we are free to adopt either rule. I believe the "express negligence" rule is the better reasoned and fairer one, and is much less likely to result in dispute or litigation. There would be no interpretation problems if this rule were adopted. The question would simply be: Is the negligence of the indemnitee expressly referred to?

The rationale of this rule was well stated by the court in Perry v. Payne, 1907, 217 Pa. 252, 66 A. 553, 555, 11 L.R.A.,N.S., 1173.

"It is contrary to experience and against reason that the contractors should agree to indemnify (the owner) against the negligence of himself or his employees. It would make them insurers, and impose a liability upon the contractors, the extent of which would be uncertain and indefinite, and entirely in the hands of (the owner). The results of such a liability might become most disastrous. * * * A single act of negligence on the part of the owner or his employees, over whom the contractors would have no restraint or control whatever, might create a liability which a lifetime of successful business could not repay. An interpretation of the bond which might give rise to such results could hardly be regarded as reasonable or as giving effect to the intention of the parties. * * * The liability of such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it. The manifest purpose, in such cases, to indemnify against the injury which, under the circumstances, could reasonably be apprehended only from the action of the indemnitor or his servant, is a weighty consideration in construing indemnity contracts. The circumstances surrounding the parties, the one, the owner for whom the building is to be erected, and the other, the contractor who is to construct the building and hence from whose acts injury to persons and property may be anticipated, would seem to make the conclusion irresistible, that unless expressly stipulated in the contract, the owner is not to be indemnified against his own negligence."

The action of the majority in putting the burden of Herkenhoff's negligence on the Metropolitan by interpretation does not appeal to me and as above stated such is the minority rule, and I dissent.