SAVOY, Judge.
The facts in the instant case have been well summarized by the district judge in his reasons for judgment, and we adopt the following portion of his opinion as our own:
“This is a suit for damages, for injuries and medical expenses, resulting from an accident that occurred on July 11, 1961, on Highway 14 at the entrance to the shopping center in which the Bowlarena is located. Gerald Randle was driving his automobile north on Highway 14 at approximately 9:15 P.M., when an automobile driven by Mrs. Maisie Harmon drove into Highway 14, coming from the Bowlarena, and the Randle automobile struck the left side of the I-Iarmon automobile in the highway itself, causing certain injuries to the plaintiff, Julia Moore, who was a passenger in the Randle automobile. There seems to be no question about the fact that the negligence of Mrs. Harmon in driving onto this main highway from this shopping center entrance was the proximate cause of the accident. As a matter of fact, there is no evidence to show any negligence on the part of Randle and no contributory negligence on the part of Julia Moore, who testified that she did not see the Harmon car until immediately before the accident. It is evident that Randle expected Mrs. Harmon to stop before entering the main highway, and he testified that he thought she had stopped but that all of a sudden she continued into the intersection, which made it impossible for him to avoid the accident.
*193 “With reference to the extent of injuries sustained by Julia Moore, there was no report of any injury on her part to State Trooper Bertrand at the scene of the accident, and Randle testified that plaintiff never complained to him about being hurt. The accident occurred on July 11, 1961. She did not go to see a doctor until August 24, 1961, about six weeks after the accident, and then she went to the doctor on the suggestion of Mr. Drewett, who was then her attorney. There was considerable argument on the circumstances involved here. The court finds nothing improper in the attorney suggesting that his client seek medical advice and treatment with reference to an injury, but the circumstances do indicate that whatever pain and discomfort Julia Moore had for six weeks following the accident must have been minimal if she didn’t seek the services of a doctor until her attorney, at that time, suggested that she do so. This is particularly true since on the night of the accident Julia Moore was returning from Charity Hospital where she had gone to receive treatment for her tonsils at about 9:00 o’clock that night. So it is evident that she knew that services were available to her at Charity Hospital for any complaint that she might have. The court concludes that her complaints for pain and suffering prior to the time she went to see the doctor certainly were not substantial.
“She went to see Dr. Steve Price, who «“xamined her on August 24, 1961, and diagnosed her difficulty as a lumbosacral sprain. Dr. Price testified to the fact that there were muscle spasms which confirmed the existence of pain in the lumbosacral area. She returned to his office one week later for diathermy, but it was not until September 18 again that she returned for diathermy, and subsequent diathermy treatments were given on September 22, September 26, September 28 and October 2, when Dr. Price discharged her as in no need of further treatment, and, as he stated, Julia Moore then told him that she was ‘feeling all right.’
“Dr. Price had x-rays taken, which were negative with respect to any bone injury.
“It appears that she was treated for this sprain for a period of a little over 30 days. Dr. Price explained that it would be possible for her to have sustained a sprain in the accident, and that it was not unusual that she would not suffer pain immediately following the accident.
“The court has considered the extent of her injuries in line with other cases making awards for what appear to be considerably more painful injuries in the area of the back, over a longer period of time, and has concluded that an award of $600.00 would be sufficient for the injury of pain and suffering sustained by this plaintiff. With reference to the medical expenses, it was established that the bill of Dr. Price was $40.00. The x-ray bill was $25.00. The drug bills were $24.74, less $7.65, which was prescribed for high blood pressure. It was not established that the high blood pressure was the result of this particular accident. Special damages allowed, therefore, will be in the sum of $82.09. The fee of Dr. Price for testifying as an expert will be fixed at $50.00 and taxed as costs. Accordingly, judgment is rendered in favor of the plaintiff and against Liberty Mutual Insurance Company in the total sum of $682.09, with legal interest thereon from date of judicial demand until paid, and all costs.”
We are of the opinion that the award made to Julia Moore is reasonable and adequate under the evidence in this case.
The district judge, in the course of his opinion, stated that the defendant, Liberty Mutual Insurance Company, filed a third party complaint against Gerald Randle based upon his alleged negligence as a joint tort feasor. The court found that Gerald Randle was not negligent to the extent of proximately causing the accident, even concurrently with Maisie Harmon. With this finding, we are in full accord. However, the court found that the third party complaint was also based upon the *194 release signed by Randle on September 20, 1961, wherein Randle was paid the sum of $1,000.00 in full settlement of his claim against Maisie Harmon, et al, which claim was paid by Liberty Mutual Insurance Company, as the insurer of the Harmon vehicle.
The district judge found that the document signed by Randle contained an obligation and covenant to idemnify and save harmless Henry Harmon and Maisie Harmon from and against all claims and demands whatsoever on account of or in any way growing out of said occurrence and its results, both to perso^n and to property. The district judge felt obligated to follow the literal wording of the document which Randle signed, and accordingly, he rendered judgment in favor of Liberty Mutual Insurance Company and against Gerald Ran-dle for the sum of the judgment awarded in favor of Julia Moore against Liberty Mutual Insurance Company.
The instrument signed by Gerald Randle reads as follows:
“RELEASE
AND SETTLEMENT OF CLAIM
“KNOW ALL MEN BY THESE PRESENTS, That I, Gerald Randle, an individual of (Street) 312 N. Calcasieu Street, (City or Town) Lake Charles, (State) Louisiana being of full age, and married, for the sole consideration of One Thousand and No/100 ($1,000.00) Dollars to me paid by or on behalf of Henry Harmon and Maisie V. Harmon, both individuals, the receipt whereof is hereby acknowledged, do hereby release, acquit and discharge said party or parties from all claims and demands, actions and causes of action, damages, cost, loss of service, expenses and compensation on account of, or in any way growing out of personal injuries, whether known or unknown to me at the present time, and property damage resulting or to result from an occurrence that took place on or about the 11 day of July, 1961, at or near Lake Charles, Louisiana, by reason of said Gerald Randle being the owner and operator of a vehicle which was in collision with a vehicle owned by said Henry Harmon or Maisie V. Harmon and operated by said Maisie V. Harmon and do hereby covenant to indemnify and save harmless said party or parties from and against all claims and demands whatsoever on account of, or in any way growing out of said occurrence, or its results, both to person and property.
“It is further agreed that this Release expresses a full and complete SETTLEMENT of a liability claimed and denied, regardless of the adequacy of the aforesaid payment made, and that said payment and the acceptance of this Release shall not operate as an admission of liability on the part of anyone, nor as an estoppel, waiver, or bar with respect to any claim the party or parties released may have against the undersigned.
“WITNESS my hand and seal this 20 day of September, 1961.
“Witnesses: THIS IS A RELEASE! READ BEFORE SIGNING
s/J. Clem Drewett_
(Witness’ Signature)
(Address)
s/Payton Covington_
(Witness’ Signature)
(Address)”
I have read this release___
s/Gerald Randle_(L.S.)
*195 Counsel for appellee, Liberty Mutual Insurance Company, in brief and in oral argument, states that in the case of Metropolitan Paving Company, Inc. v. Gordon Herkenhoff & Associates, Inc., 66 N.M. 41, 341 P.2d 460, the Supreme Court of New Mexico held as did the trial judge in the instant case as to indemnity provisions somewhat similar to those in the contract in the instant case. However, counsel is frank to admit that the rule adopted by the court in that case is a minority rule in this country.
The dissenting judge in the case of Metropolitan Paving Company, Inc. v. Gordon Herkenhoff & Associates, Inc., supra, said:
“The rule proposed by the appellant appears in 175 A.L.R. 30 and reads as follows:
“Tn the overwhelming majority of the cases the result reached by their interpretational efforts can be condensed into the simple rule that where the parties fail to refer expressly to negligence in their contract such failure evidences the parties’ intention not to provide for indemnity for the indemnitee’s negligent acts.’ ”
In 17 C.J.S. Contracts § 319, the following statement is made:
“Where possible, a reasonable and equitable construction will be given a contract; but harsh and unreasonable terms may not be ignored or changed by the court contrary to the clear meaning of the language used and the intent of the parties.
“The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the court will likewise endeav- or to give a construction most equitable to the parties, and one which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided. It is not the province of a court, however, to change the terms of a contract which has been entered into, even though it may be-, a harsh and an unreasonable one; nor will the dictates of equity be followed if by so doing the terms of a contract are ignored, for the folly or wisdom of a contract is not for the court to pass upon; its terms, however onerous they may be, must be enforced if such is the clear meaning of the language used, and the intention of the parties using that language.”
In the case of Oil Field Supply & Scrap Material Co. v. Gifford Hill & Co., Inc., 204 La. 929, 16 So.2d 483, the Louisiana Supreme Court said that the contract is the law between the parties and they are bound by their agreements regardless of harmful consequences, provided the agreement is not contrary to morals and in violation of some prohibitory law. The court, however, went on to say that the fact that informed and experienced persons do not usually and customarily bind themselves to unjust and unreasonable obligations is a serious factor that must be taken into consideration in determining that question. While it is true that the contract in the Oil Field Supply & Scrap Material Co. case, supra, was verbal, and the contract in the instant case is a written one, the same rules of law are applicable.
In the instant case the evidence clearly reflects, as shown by the trial judge’s opinion and by the evidence in the record of the case, -that Gerald Randle was not negligent in the accident involved herein, and that the sole proximate cause of the accident was the negligence of the driver of the other vehicle, Maisie Harmon. The evidence also reflects that the release which Randle signed was not intended by him to relieve the company, Liberty Mutual Insurance Company, from liability incurred because of its insuring the vehicle driven by Maisie Harmon. Certainly it could not be reason *196 ably construed that when Randle signed said release he intended to be responsible for the damages caused the guest passenger in his vehicle. To hold otherwise would lead to an unreasonable, absurd and unjust conclusion.
For the reasons assigned, the judgment of the district court is affirmed insofar as it grants judgment in favor of Julia Moore, and is reversed insofar as it grants judgment to Liberty Mutual Insurance Company against Gerald Randle, and judgment is hereby rendered in favor of Gerald Randle and against Liberty Mutual Insurance Company, rejecting its third party demand and dismissing said claim as against Gerald Randle. Costs incurred in the district court and on appeal are assessed against Liberty Mutual Insurance Company.
Affirmed in part, reversed in part and rendered.