John LYONS, Plaintiff,

v.

UNITED FRUIT COMPANY, Agencia Maritima Hondurena, S.A., and Empresa Hondurena de Vapores, S.A., Defendants.

AGENCIA MARITIMA HONDURENA, S.A., and Empresa Hondurena de Vapores, S.A., Third Party Plaintiffs,

v.

BETHLEHEM STEEL COMPANY, Third Party Defendant.

United States District Court
S. D. New York.

Feb. 4, 1959.

Henry Isaacson, New York City, for plaintiff, Jacob Rassner, New York City, of counsel.

John P. Carson, New York City, for defendant Empresa Hondurena de Vapores, S.A.

Mendes & Mount, New York City, for third-party defendant, F. A. Bull, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

Plaintiff, John Lyons, moves to set aside a special verdict of the jury against him and in the alternative seeks judgment in his favor on this same verdict. Defendant Empresa Hondurena de Vapores (hereinafter "Empresa") has also moved for judgment on the verdict.

This action was brought by plaintiff to recover for personal injuries he sustained while working aboard defendant's vessel, the S/S Choloma, as an employee of Bethlehem Steel Company, the third party defendant.[1] On December 11, 1956, the day of the accident, the ship was tied up at Bethlehem's Hoboken, New Jersey shipyard for repairs. Plaintiff, an iron worker, was assigned to work in the port wing of the ship's large molasses tank. In order to leave the port wing, plaintiff had to pass over or near a large opening of the tank in the tween deck. The accident occurred when plaintiff slipped into this opening and fell 10–15 feet to the floor of the tank, sustaining serious injuries.

It was plaintiff's contention that the accident was caused by inadequate lighting in the area of the accident and by the absence of a safe passageway across the opening into which he fell. He further claimed that his injuries resulted from the fact that the defendant was negligent in two respects: (1) Defendant negligently turned the ship over to Bethlehem in such a condition that plaintiff was not provided with a safe place to work and (2) Defendant breached its non-delegable duty to inspect the ship during the time the repairs were in progress, and to correct dangerous conditions. Although plaintiff originally also sought to recover under the doctrine of unseaworthiness, this theory was not pressed and was abandoned by plaintiff at the trial.

Defendant Empresa impleaded the Bethlehem Steel Company, the plaintiff's employer, claiming the right to indemnity arising out of the agreement to repair the involved portion of the ship.

With the consent of all the parties, I submitted the case to the jury on a special verdict.[2] A copy of the form containing the instructions and questions submitted to the jury and the jury's answers appears in the appendix to this opinion.

The jury found that the accident was caused by an unsafe condition aboard the ship, but that defendant Empresa had not negligently transferred an unsafe vessel to Bethlehem. The jury, which had been instructed that defendant's duty to inspect for and correct dangerous conditions existed only so long as it controlled the area in question, also found that defendant did not have control over the area of the accident at the time of plaintiff's fall. At that point there remained no grounds upon which defendant's liability and in turn the liability of Bethlehem could have been predicated. The jury did, however, go on to answer the remaining questions. The reasonable value of plaintiff's damages was found to be $30,000 diminished by 25% due to plaintiff's contributory negligence. The jury also found the accident to have occurred within Bethlehem's work area and as a result of Bethlehem's failure to perform its repair work with reasonable safety.

Following the return of this verdict, I discharged the jury with the consent of all the parties.

### Plaintiff's Contentions

Plaintiff now contends that: (1) The verdict should be set aside because of alleged inconsistencies in the jury's findings, and (2) The Jury's finding that the accident resulted from an unsafe condition, entitles plaintiff to judgment as a matter of law.

#### A. *The Claimed Inconsistencies*

The plaintiff's argument on this point is based on an alleged inconsistency between (1) the jury's finding that defendant was not negligent in regard to

---

1. Plaintiff did not sue Bethlehem directly, apparently because he is restricted in his remedy against his employer by the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S. C.A. § 901 et seq.

2. Plaintiff's only exception to the questions or the charge dealt with question (4). It was his position that the jury should have been instructed that control was immaterial to the defendant's liability and that in any event the issue of control should have been decided by the court as a matter of law.

the condition of the ship at the time it was turned over to Bethlehem, and its further finding that defendant did not have control of the area of the accident, on the one hand, and (2) the assessing of damages on the other.

It is plaintiff's contention that by assessing damages the jury necessarily found liability on the part of Empresa. This argument is based mainly on the following language in my oral instructions to the jury: "However, you must assess damages under question (6) if the plaintiff has sustained his burden of proof as to either question (3) or question (5) because either one would give him the right to a recovery." (p. 14 of charge.)

Plaintiff also alludes to the following instructions contained in the typed question sheet following question (5). "If your answer to both questions (3) and (5) is 'no' you will not answer any further questions."

I find absolutely nothing in the charge, the questions or in the jury's answers to support plaintiff's motion. It is obvious that when the jury found no control by Empresa and no "original" negligence on Empresa's part (questions (2) and (4)), Empresa's non-liability had been established. Therefore, if the jury erroneously failed to follow instructions, and went on to assess damages, this was a totally meaningless act. That there were no inconsistencies in the jury's findings is shown by the fact that the jury also found that the accident was caused by Bethlehem's fault. Thus the jury probably believed that it was assessing damages against Bethlehem. In my charge I had told the jury that two law suits were being tried together. They may well have believed, in error, that this meant that they had to adjudicate the litigation between Bethlehem and Empresa and, therefore, answer the questions on damage and on Bethlehem's liability. This would represent a misunderstanding, on the jury's part, of the law of indemnity, but the very purpose of submitting this case on a special verdict was to prevent an erroneous general verdict

through confusion on this difficult legal point. The fact that the jury's action demonstrated that a special verdict was indeed indicated in this case, is hardly grounds for invalidating it.

Further, after a careful rereading of my charge and the questions submitted to the jury, I believe that the fact that the jury went on to assess damages indicates that they followed instructions, albeit with an excess of caution.

It should be emphasized that the jury was never explicitly instructed not to assess damages under question (6) if they answered questions (3) and (4) in the negative. In the charge, I told them that they *must* assess damages if they answered questions (3) and (5) in the affirmative. The instructions on the question sheet indicated that they would answer no further questions if they answered questions (3) *and (5)* in the negative. Since question (5) was not answered at all, the jury apparently believed that this instruction was inapplicable. The jury then followed the instructions typed under question (4) which read: "If your answer to question (4) is 'no', you will not answer question (5) *but you will go on to question (6)*". (Emphasis supplied.) They, therefore, went on to question (6) and assessed damages.

In any event, the argument based on the alleged inconsistencies is insignificant and without merit. The jury has returned its verdict which is crystal clear and intelligent, and strained and ingenious theories advanced by the plaintiff will not cause me to invalidate a clear and consistent verdict reached after considerable deliberation.

It was stated appropriately by Judge Clark in Morris v. Pennsylvania R. Co., 2 Cir., 1951, 187 F.2d 837, 840: "[R]econciliation of the jury's various responses should be sought, and accepted wherever possible, to achieve a harmonious result." In Angland v. Arco Auto Carriers, Inc., 2 Cir., 1952, 195 F.2d 102, 103, the court rejected the theory upon which appellant sought to have it find the verdict inconsistent because the court found

two *"equally plausible explanations"* upon which the verdict could be harmonized. In this case, plaintiff's explanation of the verdict is far from "equally plausible" with the view that the jury's answers are clearly consistent. Indeed, plaintiff's argument is plainly implausible. I can only conclude that defendant Empresa was exonerated from all liability when the jury found no negligence on its part and no control on the part of Empresa of the area involved.

## B. *Control*

This brings me to plaintiff's second contention, i. e. that irrespective of any other findings, the jury's finding under question (1) that plaintiff's injuries were proximately caused by an unsafe condition, entitled plaintiff to judgment as a matter of law. Since the jury found that defendant had not negligently turned the ship over to Bethlehem in an unsafe condition, plaintiff's argument assumes either (1) that the question of control was immaterial to the issue of Empresa's liability or (2) that I should have decided the question of control in plaintiff's favor as a matter of law.

Both of these proffered assumptions run counter to the well settled law in this circuit. The question of the materiality of the shipowner's control over the work area was before the Court of Appeals in Gallagher v. United States Lines Co., 2 Cir., 206 F.2d 177, certiorari denied 1953, 346 U.S. 897, 74 S.Ct. 221, 98 L.Ed. 398. There the plaintiff, a longshoreman employed by a stevedoring firm, was injured while helping to unload the defendant's vessel. In reversing a judgment for the plaintiff, the court pointed out that the defendant had not exercised any control over the details of the work. The court held that

"Where power is reserved by one who has hired an independent contractor to direct or control the contractor, an affirmative duty arises to exercise that power with reasonable care. * * * The duty is necessarily co-extensive with the power. Thus, a general ability to control the work in order to insure that it is satisfactorily completed in accordance with the requirements of the contract does not of itself make the hirer of an independent contractor liable for harm resulting from negligence in conducting the details of the work. * * * The hirer 'must have the power to control the manner of performing the very work in which the carelessness occurred.' Vogel v. Mayor of City of New York, 92 N.Y. 10, 18, 44 Am.Rep. 349. Viewed in perhaps another way, United [the shipowner] owed a duty to [plaintiff], a business visitor, *but this duty did not extend to conditions and activities over which United had no control."* 206 F.2d at page 179. (Emphasis supplied.)

The Gallagher case has been followed in this circuit by Berti v. Compagnie De Navigation Cyprien Fabre, 2 Cir., 1954, 213 F.2d 397 and Filipek v. Moore-McCormack Lines, Inc., 2 Cir., 1958, 258 F. 2d 734.

It was in accordance with these clear pronouncements of the Court of Appeals, that I charged the jury that the shipowner's non delegable duty to inspect the ship and correct dangerous conditions might extend throughout the time when repairs were in progress, *but only so long as defendant retained control of the area in question.* On the same grounds I, of course, denied plaintiff's request to charge that control was immaterial to Empresa's liability.[3]

■ In this case the only fact from which the jury could have inferred con-

---

**3.** Following my formal charge, and at plaintiff's request, I further explained the shipowner's duty to see to it that plaintiff was provided with a safe place to work, in the following language: "When I talked to the jury about the obligation of the ship to give the plaintiff a reasonably safe place to work, I meant the entire *period of time* that the plaintiff was working there, including the time that he was going along into that little opening and coming from it." (p. 35 of charge) (Emphasis supplied). Although I believe that the point had been ade-

trol on the part of Empresa was the presence aboard, at the time of the accident, of the ship's master. On the other hand, it was undisputed that none of defendant's employees was near the molasses tank at the time in question and only Bethlehem's employees were present.[4] There was thus ample evidence to justify a finding of fact that the defendant had surrendered control of the work area to Bethlehem before the accident occurred, and I can, therefore, find no grounds for plaintiff's assertion that I should have resolved the issue of control in his favor as a matter of law. The Berti case, supra, is particularly in point. In that case, involving an injured longshoreman, the trial judge charged that although the stevedoring firm had control of the unloading operations, the master of the ship was still in charge and could have stopped the work if it was unsafe. The Court of Appeals found that this language inferred that the shipowner could be liable solely on the basis of its failure properly to supervise the operation.

This was found to be fatal error, the court through Judge Clark saying:

"[T]wo of [the shipowner's] men were present at the hatch supervising distribution of the cargo and guarding against pilfering. But there is no evidence that they were in any other way concerned with the manner in which American perform-

ed its work. * * * American has continually asserted that there was an issue as to control of the operation, but we see virtually no evidence to support its contention. *And had there been, the question would properly have been one for the jury.* We are clear that since control of the details of the operation was left to American [the stevedoring firm], Cyprien [the shipowner] cannot be held for negligence in the latter's performance." 213 F. 2d at pages 399, 400. (Emphasis supplied.)

■ It is plain that the cited cases completely dispose of plaintiff's contentions in regard to the question of control. Control was material and the question was properly submitted to the jury. I therefore, conclude that since the jury found that Empresa did not have control over the work area and that it did not negligently turn the ship over to Bethlehem in an unsafe condition, the defendant is not liable to plaintiff for the injuries he sustained, and that defendant is entitled to judgment on the jury's verdict.

Plaintiff's motions are denied in all respects.

Defendant's motion for judgment on the jury's verdict is granted.

The third party complaint against Bethlehem Steel Company is dismissed.

Settle judgment promptly.

quately covered previously, the purpose of this explanation was to obviate any possibility that the jury could conclude that, regardless of control, defendant was relieved of all duty the moment it turned the ship over to Bethlehem. The explanation dealt only with the temporal extent of defendant's duty. The jury had been carefully instructed previously that this duty depended upon control and nothing in my explanation in any way modified my previous charge in regard to the issue of control over the particular area involved. (p. 11 of charge).

Indeed plaintiff cannot be heard to complain over the additional explanation made at his own request. Had plaintiff believed, at the time, that I had changed my views on the issue of control he would certainly have immediately object-

ed anew to the submission of question (4) to the jury, because the question would then have become irrelevant. Since I hardly believe that plaintiff intended to trick the court into error, I must surmise that he correctly understood my remarks to refer only to the temporal extent of defendant's duty, and not to the area of control.

4. Indeed, the evidence showed that Bethlehem's repair work had been in progress since the previous day and there was no evidence that any of defendant's employees were in the area of the accident during this entire period. Thus the jury might reasonably have inferred that Bethlehem had sole control over the area in question from the time it began its work.

### Appendix

*Questions and Instructions submitted to the jury.*

(1) Were Mr. Lyons' injuries proximately caused by any unsafe condition in the area where the accident occurred?

Answer: Yes

If your answer to question (1) is "No" you will not answer any further questions.

If your answer to question (1) is "Yes" you will answer question (2).

(2) Was defendant Empresa negligent in that at the time the repair personnel first came aboard the ship, Empresa had not taken reasonable precautions to assure that the plaintiff would have a safe place to work?

Answer: No

If your answer to question (2) is "No", you will not answer question (3) but you will go on to question (4).

If your answer to question (2) is "Yes", you will answer question (3).

(3) Was this negligence a proximate cause of the accident?

Not answered

If your answer to question (1) is "Yes", you will answer question (4).

(4) At the time of the accident, did defendant Empresa have control of the area in which the accident occurred?

Answer: No.

If your answer to question (4) is "Yes", you will answer question (5).

If your answer to question (4) is "No", you will not answer question (5) but you will go on to question (6).

(5) Was the accident proximately caused by any negligent failure on the part of Empresa to do either or both of the following while the repairs were in progress:

(a) make a reasonable inspection of the tank to ascertain whether Bethlehem was conducting the repairs in such a way that the plaintiff was provided with a safe place to work;

(b) remedy any unsafe conditions of which it had knowledge or which a reasonable inspection would have revealed.

Not answered.

If your answer to question (5) or question (3) or both is "Yes" you will answer question (6).

If your answer to both questions (3) and (5) is "No", you will not answer any further questions.

(6) What is the reasonable value of Lyons' damages?

Answer: $30,000.

If you awarded damages under question (6), you will answer question (7).

(7) (a) Did any negligence of plaintiff himself contribute to the accident?

Answer: Yes

If the answer to (7) (a) is "Yes", you will answer (7) (b).

(b) In what percentage did the negligence of plaintiff himself contribute to the accident?

Answer: 25%

If you have assessed damages under question (6), you will answer question (8).

(8) Was the area where the accident occurred a necessary part of Bethlehem's work area?

Answer: Yes

If your answer to questions (2) and (8) is "Yes", you will answer question (9).

(9) Did Bethlehem have actual knowledge that the molasses tank of the ship had been turned over to it in an unsafe condition?

Not answered.

If your answer to question (9) is "Yes", you will answer question (10).

If you have answered question (8) in the affirmative, you will answer question (10).

(10) Was the accident the foreseeable result of Bethlehem's failure to perform its repair work with reasonable safety?

Answer: Yes