**John LYONS, Plaintiff-Appellant,**

**v.**

**EMPRESSA HONDURENA DE VA-PORES, S.A., Defendant-Appellee,**

**Bethlehem Steel Company, Third-Party Defendant-Appellee.**

**No. 40, Docket 25642.**

United States Court of Appeals Second Circuit.

Argued Nov. 6, 1959.

Decided Dec. 18, 1959.

Thomas F. Frawley, New York City (Henry Isaacson and Jacob Rassner, New York City, on the brief), for plaintiff-appellant.

John P. Carson, New York City, for defendant-appellee.

Frank A. Bull, of Mendes & Mount, New York City, for third-party defendant-appellee.

Before CLARK, HINCKS, and WATERMAN, Circuit Judges.

CLARK, Circuit Judge.

Plaintiff, an iron worker in the employ of Bethlehem Steel Company, brought this action for damages for personal injuries sustained in a fall aboard defendant's vessel, the S/S Choloma. Jurisdiction is based on the diverse citizenship of the parties, and claim over was made by defendant against Bethlehem as third-party defendant. At the time of the injury the vessel was at Bethlehem's shipyard in Hoboken, New Jersey, in order to have a number of deck beams renewed. The location where these repairs were to be effected could be reached only by crossing an open molasses tank in the vessel's 'tween deck. In order to afford its employees a means of ingress and egress, Bethlehem placed a twelve-inch plank across this opening and it also installed temporary electric lights to illuminate the area. These lights were connected by cable to Bethlehem's shore current.

On the morning of the accident plaintiff crossed the plank and walked three or four feet to a hole in the bulkhead through which he crawled to reach his place of work. At this time the tank area was adequately illuminated. Plaintiff completed his work about 11:00 a. m. and proceeded to return to the deck. He crawled through the hole in the bulkhead, took a step forward, and fell about nine feet to the floor of the open tank. Both he and a co-worker testified that the area was then dark except for the slight illumination which emanated from a small hatch about twenty feet above and on the other side of the tank. They also testified that the plank was not then in place. Another employee testified that several minutes prior to the accident he had crossed the plank, which was then well lighted. He further stated that several minutes after the accident the plank was in the same position and the lights were lit.

The issues were submitted to the jury for a special verdict on interrogatories.[1]

1. The questions submitted to the jury and its answers included:

"1. Were Mr. Lyons' injuries proximately caused by any unsafe condition in

The jury found that the injuries were caused by an unsafe condition, but that defendant was not negligent in failing initially to assure plaintiff a safe place to work and that defendant did not have control of the area at the time of the accident. Writing a reasoned opinion, D.C.S.D.N.Y., 170 F.Supp. 261, Judge Kaufman directed the entry of judgment upon this verdict and plaintiff appeals.

 Plaintiff contends that defendant had an absolute duty to furnish a safe place to work. It is clear, however, that the shipowner's only duty was that of exercising reasonable care under the circumstances. West v. United States, 80 S.Ct. 189; United New York and New Jersey Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 618, 79 S.Ct. 517, 3 L.Ed.2d 541. Indeed, plaintiff seems to have recognized this principle when he withdrew a claim of unseaworthiness at the trial. The trial judge instructed the jury that the ship at all times had a nondelegable duty to give the plaintiff a safe place to work. This instruction, taken in isolation, was unduly favorable to the plaintiff. But he urges that, since no exception was taken, it became the law of the case, requiring us to set aside the jury's findings. While this contention is an ingenious one, we deem its mere statement a sufficient demonstration of its fallacy.

The only remaining question is whether the jury's findings are supported by the evidence. Although either the chief officer or the captain was aboard at the time of the accident, only Bethlehem employees were shown to be in the vicinity of the molasses tank. The jury was certainly justified in concluding that control of this area had been relinquished to Bethlehem. See Filipek v. Moore-McCormack Lines, 2 Cir., 258 F.

2d 734, 737, certiorari denied 359 U.S. 927, 79 S.Ct. 605, 3 L.Ed.2d 629; Gallagher v. United States Lines Co., 2 Cir., 206 F.2d 177, 179, certiorari denied 346 U.S. 897, 74 S.Ct. 221, 98 L.Ed. 398. In any event Bethlehem undertook to supply the lighting and planks. See Long v. Silver Line, 2 Cir., 48 F.2d 15. While the jury found that an unsafe condition caused plaintiff's injuries, it also found that defendant was not responsible for the condition. It evidently considered the cause of the accident to be the temporary failure of Bethlehem's shore current. This conclusion was certainly permissible, if not required by the evidence. Plaintiff's rights against Bethlehem were exclusively under the compensation statute, and the third-party claim against it of course falls with the judgment in favor of the shipowner.

Judgment affirmed.

---

the area where the accident occurred? Answer: Yes.

"2. Was defendant Empressa negligent in that at the time the repair personnel first came aboard the ship, Empressa had not taken reasonable precautions to as-

sure that the plaintiff would have a safe place to work? Answer: No.

\* \* \* \* \*

"4. At the time of the accident, did defendant Empressa have control of the area in which the accident occurred? Answer: No."