**Francis T. RATIGAN, Plaintiff,**

v.

**NEW YORK CENTRAL RAILROAD COMPANY, Defendant and Third-Party Plaintiff (Interstate Commodities, Inc., and Troy Union Railroad Company, Third-Party Defendants).**

**Civ. A. No. 7390.**

United States District Court
N. D. New York.

Jan. 25, 1960.

McElroy, Young, Mahley, Martin & Dunn, Syracuse, N. Y., for plaintiff. Gordon H. Mahley, Syracuse, N. Y., of counsel.

Whalen, McNamee, Creble & Nichols, Albany, N. Y., for defendant and third-

party plaintiff, New York Central R. Co. Earl H. Gallup, Jr., Albany, N. Y., of counsel.

Carter & Conboy, Albany, N. Y., for third-party defendant, Interstate Commodities, Inc. James S. Carter, N. James Conboy, Albany, N. Y., of counsel.

Gerald E. Dwyer, New York City, for third-party defendant, Troy Union Railroad Company. Jerome H. Shapiro, New York City, of counsel.

JAMES T. FOLEY, District Judge.

This action was tried to a jury and became complicated solely by reason of the trial and submission of the issues created by the cross actions or claims of the New York Central Railroad Company, as third-party plaintiff, against the named third-party defendants. It seems to be the nature of cross actions of this type to arouse vigorous and even bitter dispute among the parties so involved; these issues lengthen trial, and oddly enough, the plaintiff who becomes almost a sideline spectator to the bruising battle prevails with substantial victory. It happened again in this instance and the plaintiff received a $70,000 verdict at the hands of the jury. The main action upon which this verdict was based is the common one under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. I have already denied the motions of the Railroad against such verdict and for a directed verdict in its favor, and directed the entry of judgment for such amount in plaintiff's favor upon the express determination there was no just reason for delay. Rules 58, 54(b), Civ.Proc., 28 U.S.C.A.; Ruddy v. New York Central R. Co., 2 Cir., 224 F.2d 96, 100. Such conclusion was reached because I was not conscious of any substantial error in the trial and submission of this main action, and kept in mind that under many rulings of the highest authority jury verdicts in FELA cases are practically inviolate. The amount awarded finds sufficient support in the evidence and in any event cannot be characterized as monstrous. Affolder v. New York, Chicago & St. Louis R. Co.,

339 U.S. 96, 101, 70 S.Ct. 509, 94 L.Ed. 683.

There were three cross actions primarily involved: two against third-party defendant Interstate Commodities, Inc., and one against The Troy Union Railroad Company. There is a contingent cross action by The Troy Union against its fellow third-party defendant Interstate but that will not need much discussion under the disposition I make. The number and complexity of these cross actions impelled me to take a special verdict as to them under the provisions of Rule 49(a) of the Federal Rules. In my judgment this was the best type verdict to take when there is such an array of legal theory, mixed in at the same time with the main action issues, and the Court of Appeals, Second Circuit, has expressed itself strongly in favor of such type jury verdict. Skidmore v. Baltimore & O. R. Co., 167 F.2d 54, 67, 70. Accordingly, nine questions were submitted in writing and answered by the jury in relation to the cross actions.

These questions were drafted after an unduly long conference with the attorneys for the respective parties. It is my custom when I see the need for such type verdict to acquaint the lawyers before or early in the trial of my intention to take a special verdict under Rule 49(a). I do so because the trial judge is confronted by a new problem with which the lawyers have long been acquainted, and it is my feeling that it is most helpful to request the lawyers to think over the factual issues that should be covered by the questions and try to agree upon the formulation of the questions that should be tendered to the jury. The result here in this respect was not a good one because there was little agreement, if any, by the attorneys as to the form and content of proposed questions. They did formulate in writing their own proposed questions, and such have been made part of the record. The atmosphere was heavy with strategy, and I took a middle-of-the-road approach and tried to draft questions that would be fair, simple, broad, and cover the factual issues pre-

sented by the evidence. The process on my part was one of mediation; using portions of certain questions proposed, offering my own ideas and accepting certain suggestions of the attorneys as to the form and content of final draft. I was fully cognizant and am now that the responsibility for the questions under the broad power conferred by the rule is finally for the Judge alone and I do not disown the questions submitted as my product. In my judgment, Interstate, which pressed throughout for a general verdict as to it, proposed questions that were too detailed, while the New York Central proposed questions too general with important omission of any that might cover the acts and conduct of its own employees previous to and at the time of the occurrence of the accident.

The only answer which, in my judgment, gives cause for concern is the answer of the jury to Question 7, which in effect found the New York Central guilty of "Passive" negligence. As I recall, and I am frank to admit, it was my thought to submit in some form this type question in relation to the type or degree of negligence to be accorded to the Railroad under the circumstances. My hasty research during the trial disclosed that under the New York law the question as to this abstruse theory of active or passive negligence is, generally speaking, a question of fact for the jury. McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 328, 107 N.E.2d 463: Banks v. Central Hudson Gas & Electric Corp., 2 Cir., 224 F.2d 631, 634. It is obvious to me now upon reflection that the intent and purpose of Questions "7" and "8" could only be to allow the jury "to shore up the results" of their factual findings. Morris v. Pennsylvania R. Co., 2 Cir., 187 F.2d 837, 841. It was an attempt on my part by Questions "7" and "8" to obtain the clincher which would allow easy entry of judgment one way or the other without too much legal deliberation.

The first cross action of the Railroad against Interstate, the side track industry, was based upon the settled doctrine of New York as to active and passive negligence. I have no desire nor is there any need to attempt scholarly exhibition of knowledge or research of this doctrine. Judge Hincks has done it splendidly in the Banks case, supra, reviewing all the important New York cases, and comments it may be "useful dichotomy". 224 F.2d at page 634. In my practical struggle with it as a trial Judge, the matter of degree and the splitting of negligence cause complexity, but one thing is clear and that is the doctrine must be confined to the particular facts upon which it was based and judicially promulgated. It is a good example of the caution Mr. Justice Holmes rendered years ago that general propositions do not decide concrete cases. Lochner v. State of New York, 198 U.S. 45, 74, 25 S.Ct. 539, 49 L.Ed. 937. The appraisal of active and passive negligence is solely one of fact finding, and every negligence case differs factually.

■■ The Railroad wants to restrict its negligence to failure to warn its employees of the presence of the canopy erected by Interstate, thus arguing it only violated its non-delegable duty to provide a safe place to work for its employees. However, in my judgment, it is clear that all the conduct of the Railroad through its employees must be weighed in the factual determination of its degree of delinquency because either a fault of omission or commission may constitute active negligence. Here the Railroad was in complete charge of the operation that resulted in injury as Transoceanic was in the McFall situation (304 N.Y. at page 330, 107 N.E.2d at page 472). I do not think we have the isolated situation here where the employer with the non-delegable duty places his employee on the premises of another merely failing to warn of danger, and then does little, if anything, by acts of omission or commission to contribute to the happening of the accident and injury to the employee. As Judge Hincks points out in Banks (224 F.2d at page 636) failure to take one precaution does not necessarily absolve from taking other precautions, and aggregate fault, compounded of failure

to warn and failure to use other reasonable precautions must be weighed and may result in more than passive negligence. The argument of the Railroad, in my judgment, is unpersuasive. It seeks to disregard much of the evidence at the trial and wants the conclusion that it only has a non-delegable duty to warn of danger, and any other acts, whether they be negligent or not, should not count. The search must go further, and failure to observe that degree of care and vigilance which the circumstances require may add up to active negligence. Putvin v. Buffalo Electric Co., 5 N.Y.2d 447, 458, 186 N.Y.S.2d 15, 158 N.E.2d 691; Dery v. Wyer, 2 Cir., 265 F.2d 804, 810. To me, knowledge of dangerous condition, whether actual or constructive, should have important impact on the resolution of the degree or character of negligence when combined with other circumstances of omission or commission. Putvin v. Buffalo Electric Co., supra, 5 N.Y.2d at page 458, 186 N.Y.S.2d at page 23, 158 N.E.2d at page 697; Wanser v. Long Island R. Co., 2 Cir., 238 F.2d 467, 470; Dery v. Wyer, supra.

■ From this analysis it is my conclusion that the crucial and important questions on this determination of active or passive negligence were Questions "1" through "6". The jury answered them intelligently, in accord with the evidence, and I think such answers can only lead to the conclusion that the Railroad and Interstate were guilty of active negligence, and hence the Railroad cannot recover the amount of the verdict from Interstate on the first cross action. There is much in the evidence as to the delinquency of the Railroad, which alone selected the time and place and was in complete charge and control of the sidetrack movement, to warrant a conclusion of active negligence. The admitted fumbling of instructions and the manner in which the move was made which resulted in two men on the top of a box car where one should have been is sufficient to support the answers to Questions "5" and "6", that the method of operation was negligent and proximately caused the accident and injury. The factors present in the evidence concerning careless acts of Railroad employees are such that a dismissal of this cross action as a matter of law could without much difficulty be rationalized and made. However, I am more content to accept the answers of the jury to Questions "3", "4", "5" and "6", and direct entry of judgment upon the special verdict in favor of the third-party defendant, Interstate Commodities, Inc.

■ The answer to Question "7" is merely treated as surplusage and unnecessary to the determination of the important issues of fact required by Rule 49(a) to be found by the jury. The Judge has the responsibility to apply appropriate legal principles to facts found by the jury. It is settled that only questions of fact are to be put to the jury by the interrogatories, and the legal proposition is to be deduced from the answers by the Court. Cate v. Good Bros., Inc., 3 Cir., 181 F.2d 146, 149; Thedorf v. Lipsey, 7 Cir., 237 F.2d 190, 193; 5 Moore's Federal Prac., 2d Ed. pg. 2204. If I were to accept the answer to Question "7" as the Railroad contends I should, it would be in the manner of taking a general verdict or one under Rule 49(b) which I did not intend to take, and then the definite and important answers to factual Questions "3", "4", "5" and "6" would have to be totally disregarded. I think that the submission of Questions "7" and "8", and my instructions on difficult legal principles, gave the jury an unnecessary legal workout which was far beyond their comprehension, and outside their sole function to decide issues of fact. The principles involved would have been difficult for a jury of law professors unfamiliar with the subject to absorb on such short notice. I think the relevant answers made indicate consistent findings by the jury on the important issues of fact, and intelligent and conscientious decision on their part should not be aborted by one answer to a difficult, legal and unnecessary question absolutely contrary to the sense and

purpose of Rule 49(a). Morris v. Pennsylvania R. Co., 2 Cir., 187 F.2d 837, 840; Lyons v. United Fruit Co., D.C., 170 F. Supp. 261, affirmed Lyons v. Empressa Hondurena De Vapores, S. A., 2 Cir., 273 F.2d 317.

The second cross action or claim over by the New York Central Railroad against Interstate is based upon a written sidetrack agreement of indemnity entered into by the predecessor owner of the property on the sidetrack and The Troy Union Railroad Company. The agreement was assigned to Interstate by the previous owner some time after the sale of the property. The extraordinary circumstance we have is that the Troy Union Railroad Company solely and without equivocation is named as the Railroad indemnified throughout the agreement without any reference by name or terminology to the New York Central or other railroads. The construction of indemnification agreements has been the source of much discussion in the Courts and I have had my own contact. Ruddy v. New York Central R. Co., D.C., 124 F. Supp. 470; Id., 2 Cir., 224 F.2d 96; Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.2d 15 (N. Y. cases cited therein); Wanser v. Long Island R. Co., 2 Cir., 238 F.2d 467, supra; Dery v. Wyer, supra.

The application of the theories of "active" and "passive" negligence should not enter into the area of contractual indemnity. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., 355 U.S. 563, 569, 78 S.Ct. 438, 2 L.Ed.2d 491. There are cases in other circuits where the indemnity agreement has been construed to indemnify completely instead of a sharing or contribution to any liability, but it seems to me there is reluctance to do so in this circuit if sharing can be construed by fair interpretation. In no case reported do we have the situation as here where a Railroad claims the benefit of such an agreement where its name does not appear. Deep Vein Coal Co. v. Chicago & E. I. R. Co., 7 Cir., 71 F.2d 963; Baltimore & Ohio R. Co. v. Alpha Portland Cement Co., 3 Cir., 218 F.2d 207; Booth-Kelly Lumber Co. v. Southern Pacific Co., 9 Cir., 183 F.2d 902, 20 A.L.R.2d 695; Atlantic Coast Line R. Co. v. Robertson, 4 Cir., 214 F.2d 746. The law of New York which must be applied is solicitous that in the interpretation which casts over the whole burden on the indemnitor there must be clear, unequivocal and explicit language to such effect. As Judge Learned Hand so colorfully put it in the Mostyn case, the purpose must be expressed beyond any peradventure of a doubt. To conclude simply, it is my feeling that if such restrictive and narrow interpretation is to be applied to the terms of the agreement, then equally so, the party or Railroad to be indemnified should also be set forth in such agreement "beyond peradventure of doubt". To me it would be a dangerous and extreme extension of a principle now carefully circumscribed by judicial decision to allow unnamed parties to benefit.

It is true that noted doctrine in New York allows a party for whose benefit a contract was made to recover on the contract for breach thereof. Lawrence v. Fox, 20 N.Y. 268. However, there is the valid distinction, in my judgment, pointed out by the attorneys for Interstate that such beneficial intent must be clearly found in the agreement. Beveridge v. New York Elevated R. Co., 112 N. Y. 1, 19 N.E. 489, 2 L.R.A. 648. Here again I say we must remember that the contract here is one for indemnification, and the one named Railroad and terminology give no indication of promised indemnification to other Railroads. If ambiguity were present, it should be resolved against the Railroad which prepared and submitted the form. Rentways, Inc. v. O'Neill Milk & Cream Co., Inc., 308 N.Y. 342, 348, 126 N.E.2d 271. To conclude, it is my judgment on this phase that as a matter of law the New York Central R. R. did not come within the terms of the indemnification agreement because it is not named, directly or indirectly, as a party thereto. The answer to Question "9" I submitted to the jury with the thought that intent and surrounding circumstances may at times

be important in the construction of an agreement and have some factual bearing upon its legal interpretation. The finding of the jury was against the New York Central Railroad in this respect, and it does give some support, even if unnecessary, to the ruling I make as a matter of law.

The third cross action was against The Troy Union Railroad Company by the New York Central upon the alternative theory that if it was not upheld on its contention that the agreement was drawn for its benefit, then The Troy Union Railroad was negligent and careless in the preparation and execution of such agreement. This claim seemed in some respects, at least to me, a friendly lawsuit, although I do not minimize the contentions or sincerity of the attorneys for the Railroad in pressing it. It struck me as a "clutch at the last straw" by the Central because an analysis of the ownership and control of the separate railroad corporations would demonstrate it is suing itself or half itself for negligence and carelessness. It was not developed in the evidence by the Railroads as to the persons from either or both railroads who negotiated the assignment of the indemnification agreement with Interstate or its execution with the predecessor owner. There is testimony that links closely the employees of the New York Central with the operation of The Troy Union Railroad Company, particularly by the division Superintendent of the New York Central, who has something to do with indemnification agreement and sat at the New York Central desk in Utica wearing two hats, one for the Central and one for The Troy Union Railroad Company. However, I find nothing in the evidence that would destroy a fair inference that the agreement and naming of the parties therein was not drawn as the New York Central, through its own employees, wanted it drawn. If there was mistake it should not be cast over, in my judgment, to the extreme penalty of the side-track industry. Negligence or carelessness cannot be imagined, assumed or speculated upon, and there is nothing in the record, in my judgment, to justify a finding that the agreement was not drawn in such manner as the New York Central agreed to accept.

The illogic of the third cross claim is pointed up by the ingenious claim over by The Troy Union Railroad Company against Interstate if it is held responsible to New York Central. This theory takes long to absorb, but such circumlocution would allow the New York Central to gain the same benefit from the indemnification agreement, although not a party to such.

This case was tried by competent lawyers, and I am sure they did their best to avoid confusion and error. I am not conscious of any error of substance during the trial. It is my opinion we received a good verdict from the jury, supported fully by the evidence, which should be reconciled and accepted as much as possible to achieve a harmonious result. Morris v. Pennsylvania R. Co., supra.

To summarize: Judgment is directed to enter on the first cause of action by New York Central against Interstate in favor of Interstate dismissing such action upon the findings of the special verdict; judgment is directed to enter as to the second cause of action involving the same parties in favor of Interstate as a matter of law, dismissing such action or claim over; judgment is directed to enter as to the third cause of action in favor of The Troy Union Railroad Company, dismissing such action for failure of proof and as a matter of law. Rule 58, F.R.Civ.Proc.

The motions of the third-party plaintiff, New York Central, are denied in all respects, and the motions of third-party defendants, Interstate Commodities, Inc. and The Troy Union Railroad Company, are granted as indicated herein, and it is

So ordered. See Matteson v. United States, 2 Cir., 240 F.2d 517.